SCOTT N. SCHOOLS (SCBN 9990)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

WENDY THOMAS (NYBN 4315420)
Special Assistant United States Attorney

    450 Golden Gate Avenue
    San Francisco, California  94102
    Telephone: (415) 436-6809
    Facsimile: (415) 436-7234
    E-Mail: wendy.thomas@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,   ) | No. CR 07-0334 CRB |
|                    ) | |
|     Plaintiff,          ) | UNITED STATES' OPPOSITION TO |
|                    ) | DEFENDANT'S MOTION TO DISMISS |
|    v.             ) | INDICTMENT |
|                    ) | |
| JOSE JESUS GUTIERREZ RODRIGUEZ, ) | |
|                    ) | Date: August 28, 2007 |
|     Defendant.       ) | Time: 2:30 p.m. |
|                    ) | Court: Hon. Charles R. Breyer |
| _____) | |

## I. INTRODUCTION

On May 29, 2007, Jose Jesus Gutierrez Rodriguez ("Gutierrez" or "Defendant") was

charged in a one count Indictment with Illegal Reentry by an Alien After Deportation, in

violation of 8 U.S.C. § 1326.  The indictment charges:

> On or about May 16, 2007, the defendant, JOSE JESUS GUTIERREZ RODRIGUEZ, an
> alien, having been previously excluded, deported, and removed from the United States to
> Mexico, and having subsequently voluntarily returned to and remained in the United
> States, was found in the Northern District of California, the Attorney General of the
> United States and the Secretary for Homeland Security not having expressly consented to
> a re-application by the defendant for admission into the United States, in violation of
> Title 8, United States Code, Section 1326.

On August 2, 2007, Defendant filed a motion to dismiss the Indictment on grounds that "the prior

deportation order was entered after constitutionally defective deportation proceedings and

therefore cannot serve as a predicate for a prosecution under 8 U.S.C. § 1326." *See* Def. Mot. to Dism. Indict., at 1.

## II. STATEMENT OF FACTS

Defendant's time in the United States is reflected in his arrest history.  His adult arrest record begins in 1994 with a conviction for misdemeanor traffic conviction, followed by a conviction for misdemeanor hit and run in 1995 and another conviction for misdemeanor petty theft in 1996.  *See* Def. Ex. D.  On or about March 15, 1997, defendant was arrested for unlawful possession of a controlled substance for sale.  *See* attached Exhibit 1.  Prior to the completion of that case, the defendant was deported to Mexico on March 25, 1997.  *See* attached Exhibit 2.  When the defendant was arrested in 1999 for transportation, sale, or distribution of a controlled substance, and for possession of a controlled substance for sale, he then sustained felony convictions for both the 1997 and 1999 cases, pleading guilty to three felony counts.  *See* attached Exhibits 3 and 4.  He was sentenced for those felony convictions to two years in prison, sentences to be served concurrently.  *See* attached Exhibit 5.

In April of 2003, he was arrested for transportation, sale, or distribution of a controlled substance and was violated on his state parole.  On June 23, 2003, he was again removed from the United States pursuant to a Notice of Intent/Decision to Reinstate a Prior Deportation Order dated April 18, 2000, and a Warrant of Removal issued June 23, 2003.  *See* attached Exhibits 6 and 7.  He was found by Immigration and Customs Enforcement ("ICE") and the Immigration and Naturalization Service ("INS") on or about May 16, 2007, at San Quentin State Prison.  *See* attached Exhibit 8.

## III.  LEGAL ANALYSIS

**A.    GUTIERREZ' 1997 DEPORTATION WAS VALID.**

**1.    Gutierrez' Due Process Rights Were Not Violated By The 1997 Deportation Proceeding.**

To succeed in a collateral attack on the 1997 deportation, Gutierrez has to demonstrate that "(1) his due process rights were violated by defects in his underlying deportation proceeding, *and* (2) he suffered prejudice as a result of the defects." *U.S. v. Zarate-Martinez*, 133 F.3d 1194,

1   1197 (9th Cir. 1998) (emphasis added).

2        Defendant was deported from the United States on March 25, 1997, following an Order

3   of Immigration Judge Beverley M. Phillips and a Warrant of Deportation signed by INS District

4   Director Thomas J. Schiltgen, both dated March 24, 1997. *See* attached Exhibits 9 and 10.  This

5   deportation followed two separate sets of Notification of Rights and Waiver of Rights, both of

6   which were presented to the defendant in Spanish, and both of which the defendant signed on

7   March 18, 1997.  *See* attached Exhibits 11 and 12.   These Notification of Rights and Waiver of

8   Rights validly waived all of the defendant's rights, including the right to be represented by an

9   attorney (*see* Exhibits 11 and 12, P. 1, ¶ 2, "Derecho a ser representado por un abogado o

10  representante"), the right to a hearing before an immigration judge (*see* Exhibits 11 and 12, P. 1,

11  ¶ 3, "Derecho a una audencia ante un juez de inmigracion"), and his right to seek relief from

12  removal, including voluntary departure (*see* Exhibits 11 and 12, P. 1, ¶ 3, "Si a usted no se le

13  permite permanecer en los Estados Unidos, un juez de inmigracion le puede permitir que se vaya

14  voluntarlamente".)  It is worth nothing that the Notification of Rights underlines the portion

15  dealing with what makes an alien eligible for cancellation of removal or voluntary departure (*see*

16  Exhibits 11 and 12, P. 1, ¶ 3, "Si usted está casado con un ciudadano de los Estados Unidos o

17  con un residente permanente de los Estados Unidos, o si usted ha vivido en los Estados Unidos

18  durante siete años o más y no ha sido convicto de ningún delito serio, puede ser que usted no

19  tenga que ser deportado.")  Defendant was also apprised of the consequences of reentering the

20  United States in a formal warning. *See* attached Exhibit 13.   The defendant signed the Waiver of

21  Rights after both sets of Notifications of Rights.  Since these signed waivers provide "official

22  records which on their face show a valid waiver of rights in connection with a deportation

23  proceeding, the burden shifts to the defendant to come forward with evidence tending to prove

24  the waiver was invalid." *United States v. Galicia-Gonzalez*, 997 F.2d 602, 603 (9th Cir. 1993).

25  Defendant has raised no issue challenging these waivers and in the absence of such evidence, the

26  records which assert that Defendant did waive his rights must be presumed to be correct. *Id* at

27  603.

28        Despite the fact that the defendant validly waived his right to a hearing before an

Immigration Judge, he nonetheless was afforded a hearing before Immigration Judge Beverley M. Phillips. Assuming, *arguendo*, that the deportation hearing transcript provided by Defendant is accurate, Defendant concedes that Judge Phillips inquired of Gutierrez' immigration attorney whether Defendant was seeking his right to appeal. *See* Decl. Of Amy Lucas, Def. Ex. A. The immigration attorney present that day stated, "No, your honor." *See* Decl. Of Amy Lucas, Ex, A. Waivers are valid when taken from defense counsel as well as when taken from a defendant. *See Galicia-Gonzalez*, at 603 (court found an alien's waiver signed by his counsel was still valid). Furthermore, the INS notes of the deportation hearing also indicate that Gutierrez waived his right to appeal. *See* attached Exhibit 14. The Judge also indicates in the lower left hand corner of her Order that Defendant waived his right to appeal during the hearing by crossing out the word "Reserved" and leaving the word "Waived" next to the word "Appeal". *See* attached Exhibit 9. Because Defendant was advised of, and waived, his rights several times, his due process rights were not violated by the 1997 deportation proceeding.

Defendant cites to *United States v. Mendoza-Lopez* to support the argument that Gutierrez was deprived of due process in the instant case. *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987). *See* Def. Mot. to Dism. Indict., at 4. However, the facts in Mendoza are very different from the fact in the instant case. In *Mendoza*, the aliens were not represented by counsel whereas here Gutierrez was represented by counsel at his deportation hearing. In *Mendoza*, the Immigration Judge refused to explain the aliens' rights to relief, even though the aliens asked questions which made it apparent that they did not understand what they had been told. *Mendoza*, at 830-32. Here, even though there were no questions from the aliens or their counsel, the Immigration Judge asked whether any of the defendants had a claim to citizenship. In *Mendoza*, the defendants were not properly advised of their direct appeal rights. Here, the Immigration Judge did inquire whether the Defendant was asking for his right to appeal and his attorney indicated that the Defendant was not. Judge Phillips made this inquiry after Defendant had already signed a Waiver of Rights to the hearing before an immigration judge.

### 2.     Even If The Deportation Proceeding Had Violated Gutierrez' Due Process Rights, He Suffered No Prejudice.

To succeed in a collateral attack on the 1997 deportation, Gutierrez must not only

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

demonstrate that the underlying proceeding violated his due process rights but also that he was prejudiced by the due process violation. *See United States v. Proa-Tovar*, 975 F.2d 592, 595 (9th Cir. 1992) (holding that once defendant has proven a due process violation, the defendant also bears the burden of proving that he was prejudiced by the due process violation). Defendant could not have suffered prejudice from any alleged defect in the 1997 removal because he was not eligible for any form of relief.

Defendant's motion states that Gutierrez was eligible for both "cancellation of removal" under 8 U.S.C. § 1229b and "voluntary departure" under 8 U.S.C. § 1229c. *See* Def. Mot. to Dism. Indict., at 6. At the time the defendant was deported in 1997, he was eligible for neither "cancellation of removal" nor "voluntary departure" and therefore suffered no prejudice.

> **a.    Defendant Was Not Eligible For "Cancellation of Removal" In 1997.**

At the time of Defendant's March 25, 1997, deportation, an alien with legal permanent residence status could apply for cancellation of removal (previously referred to as "suspension of deportation"), provided he: (1) had been an alien lawfully admitted for permanent residence for not less than 5 years; (2) had resided in the United States continuously for 7 years after having been admitted in any status; and (3) has not been convicted of any aggravated felony. An alien with nonpermanent residence status could apply for cancellation of removal (previously referred to as "suspension of deportation"), provided he (1) had been continuously physically present in the United States for seven years; (2) had good moral character; and (3) could show that deportation would work a severe hardship upon herself or upon certain United States citizen relatives. 8 U.S.C. § 1229b; *Vasquez-Zavala v. Ashcroft*, 324 F.3d 1105 (9th Cir. 2003). Regardless of whether Gutierrez had permanent residence status, he was not eligible for "cancellation of removal" in 1997 because he had not been continuously present in the United States for seven years.

Defendant was issued a legal permanent resident card on July 28, 1981. *See* Def. Exhibit A. Shortly thereafter, Gutierrez returned to Mexico and lived in Mexico until 1993. On January 29, 1993, Gutierrez and his half-brother re-entered the United States from Mexico on a flight aboard Mexicana Airlines from Guadalajara to San Francisco. *See* attached Exhibit 15.

According to information taken from the Defendant and the Defendant's half-brother taken at the time, Defendant had been living in Mexico for the past eleven years. *See* attached Exhibit 16. Therefore, at the time of his deportation in 1997, he had only been present continuously in the United States for four years.

If Gutierrez had applied for cancellation of removal with nonpermanent residence status, he would have also had to demonstrate good moral character and that his deportation would work a severe hardship upon himself or his family. During the four years that the defendant was present in the United States between 1993 and 1997, he sustained three criminal convictions. At the time of his deportation, he was facing felony drug charges. It is hard to imagine how the Defendant could demonstrate himself to be of good moral character during his time in the United States. Moreover, in his 1997 interview with INS, Defendant listed himself as being single with no dependents. *See* attached Exhibit 17. Defendant therefore did not demonstrate how his removal would effect a severe hardship on his family.

        **b.**       **Defendant was not Eligible for "Voluntary Departure" in 1997.**

An alien is eligible for voluntary departure if the alien (1) is physically present in the United States for at least one year prior to departure; (2) has good moral character for at least five years prior to departure; (3) no prior conviction for an aggravated felony; (4) demonstrates by clear and convincing evidence that the alien has the means to depart; and (5) lacks a prior voluntary departure. 8 U.S.C. § 1229c. Here, Defendant was ineligible because he did not demonstrate good moral character in the five years leading up to 1997 and was therefore ineligible for voluntary departure.

As previously mentioned, Defendant sustained three criminal convictions between 1994 and 1997, and at the time of his deportation, he had been arrested on felony drug charges. Immigration officials have discretion in making a determination of whether an alien has demonstrated 'good moral character' but there are multiple criteria which preclude a finding of 'good moral character' by the Board of Immigration Appeals for the purposes of determining whether an individual is eligible for voluntary departure. *See* 8 U.S.C. § 1101(f).

One of the categories which precludes a finding of 'good moral character' is where the alien is:

a member of one or more of the classes of persons, whether inadmissible or not, described in paragraphs (2)(D), (6)(E), and (10)(A) of section 212(a) of this Act [8 USCS § 1182(a)]; or subparagraphs (A) and (B) of section 212(a)(2) [8 USCS § 1182(a)(2)] and subparagraph (C) thereof of such section (except as such paragraph relates to a single offense of simple possession of 30 grams or less of marihuana), if the offense described therein, for which such person was convicted or of which he admits the commission, was committed during such period;

8 U.S.C. § 1101(f)(2). Section 1182(a) of Title 8 provides that an alien "shall be excluded from admission into the United States if he has been convicted of possession of or of traffic in narcotic drugs or marijuana, or an immigration officer knows *or has reason to believe* he is or has been an illicit trafficker in any narcotic drugs or marijuana." 8 U.S.C. § 1182(a) (Emphasis added). A complaint that is subsequently dismissed or has not resulted in conviction can preclude defendant from eligibility for a finding of good moral character because it can give the immigration officer *reason to believe he is or has been an illicit trafficker* in any narcotic drugs or marijuana. *Nunez-Payan v. Immigration & Naturalization Service*, 811 F.2d 264, 267 (5th Cir. 1987), *reh. den.* 815 F2d 384 (5th Cir. 1987)(Court concluded that alien's arrest and probation for transporting marijuana precluded a finding of good moral character).

Here, Defendant was arrested on March 15, 1997, for possession of a narcotic and subsequently charged in a felony complaint under California Health and Safety Code Section 11350. *See* attached Exhibit 3. The defendant was deported prior to the resolution of that case but was subsequently convicted of that charge on July 7, 1999. *See* attached Exhibit 5. Defendant's outstanding arrest for possession of a narcotic would give an immigration officer reason to believe Defendant was an illicit trafficker in narcotics and would thereby preclude him from having demonstrated good moral character.

In addition to those factors which preclude a finding of 'good moral character', "[t]he fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character." 8 U.S.C. 1101(f)(9). *See also Faddah v. Immigration & Naturalization Service*, 553 F2d 491 (9th Cir.1977)(court upheld the Board of Immigration Appeals' decision that an alien who fails to file accurate federal income tax return is not person of good moral character, and is therefore not eligible for suspension of deportation); *Fisher v INS*, 79 F.3d 955 (9th Cir. 1996)(court upheld the Board of Immigration Appeals' decision that an alien lacked good moral character because she had entered into a sham

marriage and denied her voluntary departure); *Medina v Gonzales*, 404 F3d 628 (9th Cir. 2005)(court upheld the Board of Immigration Appeals' decision that an alien lacked good moral character because she made false statements to INS officials with the subjective intent of obtaining a benefit). Here, not only had Gutierrez been arrested on felony drug charges, but he also sustained three convictions in the five years leading up to 1997. It is therefore not plausible that he would be found to be of good moral character in the five years leading up to his 1997 deportation and would therefore not have been eligible for voluntary departure.

Because Gutierrez was ineligible for either "cancellation of removal" or "voluntary departure" in 1997, he has failed to demonstrate that he was prejudiced by the deportation proceedings in 1997.

**B.    BECAUSE GUTIERREZ' 2003 REMOVAL CAN ALSO SERVE AS THE "PREDICATE ELEMENT" OF THE INSTANT INDICTMENT, DEFENDANT'S MOTION SHOULD BE DENIED.**

Defendant's motion disregards the fact that the current Indictment does not have to rely on the 1997 deportation. Gutierrez was also validly removed from the United States on June 23, 2003. He was subsequently found by INS in the Northern District of California on May 16, 2007. *See* attached Exhibit 8. These facts satisfy the elements of the violation charged in the Indictment without any reference to the 1997 proceedings mentioned in Defendant's Motion to Dismiss Indictment. Although Gutierrez is allowed to collaterally attack the removal order underlying a Section 1326 indictment, none of the issues raised in Defendant's Motion implicate the 2003 Gutierrez Removal Order that could also serve as the predicate element of the Indictment. Gutierrez' due process rights were not violated by the 2003 Removal Order, and he could not have been prejudiced by any potential defects given he was ineligible for relief from removal.

**1.    Gutierrez Was Also Validly Removed From The United States In 2003.**

Gutierrez was validly removed from the United States following a Warrant of Removal/Deportation dated June 23, 2003. *See* attached Exhibit 7. Defendant's motion makes scant reference to the 2003 removal except to say that, "[a]s a result of the due process infirmities of the 1997 Deportation Order in this case, the 2003 Reinstatement of the 1997 deportation order is similarly invalid, and cannot serve as the predicate deportation required to prosecute Mr.

Gutierrez under 8 U.S.C. § 1326." *See* Def. Mot. to Dism. Indict., at 9.  Defendant cites no

support for this claim, likely because the Ninth Circuit recently addressed and rejected this

argument in *Morales-Izquierdo v. Gonzales*, 486 F.3d 484 (9th Cir. 2007).  In *Morales-

Izquierdo,* the Court determined that an immigration official can reinstate a prior order of

removal, regardless of the process afforded in the underlying order, without offending due

process.  The *Morales-Izquierdo* decision reinforces the validity of the 2003 Removal Order.  In

discussing whether an alien has a right to force the government to re-adjudicate a removal order,

the court explained:

> an alien who respects our laws and remains abroad after he has been removed should
> have no fewer opportunities to challenge his removal order than one who unlawfully
> reenters the country despite our government's concerted efforts to keep him out. If
> Morales has a legitimate basis for challenging his prior removal order, he will be able to
> pursue it after he leaves the country, just like every other alien in his position. If he has no
> such basis, nothing in the Due Process Clause gives him the right to manufacture for
> himself a new opportunity to raise such a challenge. The contrary conclusion would
> create a new and wholly unwarranted incentive for aliens who have previously been
> removed to reenter the country illegally in order to take advantage of this self-help
> remedy. It would also make a mockery of aliens who do respect our laws and wait
> patiently outside our borders seeking lawful admission. Nothing in the Constitution
> requires such a perverse result.

*Morales-Izquierdo v. Gonzales*, 486 F.3d 484, at 498.  Defendant has not challenged any aspect

of the 2003 removal which could also serve as the predicate element of the instant Indictment.

Criminal sanctions can be based on any form of removal. *United States v. Luna-Madellaga*, 315

F.3d 1224 (9th Cir. 2003) (the court held that for the purposes of criminal sanctions, what

matters is the defendant's physical removal from the United States, not the procedure employed);

*see also United States v. Diaz-Luevano*, 2007 U.S. App. LEXIS 17002 (9th Cir. 2007)(court

found that reinstatement can be the basis for a removal even though a defendant is not entitled to

a hearing before an Immigration Judge).

### 2.  Even If Gutierrez Could Demonstrate The 2003 Removal Violated His Due Process Rights, He Cannot Demonstrate That He Suffered Prejudice.

Even if Defendant could identify a defect in the 2003 removal, he cannot make the

requisite showing of prejudice.  Again, Gutierrez must not only demonstrate that the underlying

proceeding violated his due process rights but also that he was prejudiced by the due process

violation. *Zarate-Martinez*, at 1197; *Proa-Tovar*, at 595.  Defendant could not have suffered

1

2

prejudice from any alleged defect in the 2003 removal because he was not eligible for any form of relief.

3

### a.     Defendant Was Not Eligible For "Cancellation of Removal" In 2003.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

At the time of Defendant's June 23, 2003, deportation, an alien with legal permanent residence status could apply for cancellation of removal, provided he: (1) had been an alien lawfully admitted for permanent residence for not less than 5 years; (2) had resided in the United States continuously for 7 years after having been admitted in any status; and (3) has not been convicted of any aggravated felony.  An alien with nonpermanent residence status could apply for cancellation of removal, provided he (1) had been continuously physically present in the United States for ten years; (2) had good moral character during that time; and (3) could show that deportation would work a severe hardship upon himself or upon certain United States citizen relatives. 8 U.S.C. § 1229b; *Vasquez-Zavala v. Ashcroft*, 324 F.3d 1105 (9th Cir. 2003).   Putting aside the fact that defendant was previously deported in 1997, which means that he could not have been continuously present in the United States for a period of ten years in 2003, at the time of Defendant's 2003 removal, Defendant had been convicted of an aggravated felony.  Gutierrez was convicted of an aggravated felony in 1999.  *See* attached Exhibits 4 and 5.  On July 7, 1999, Gutierrez pled guilty to one count of transportation, sale, or distribution of specified controlled substances under California Health and Safety Code Section 11377(A), one count of possession of a controlled substance for sale under California Health and Safety Code Section 11378, and one count of unlawful possession of a controlled substance under California Health and Safety Code Section 11350.  *See* attached Exhibit 5.

22

23

24

25

26

27

28

A conviction under California Health and Safety Code Section 11378 constitutes an aggravated felony under 8 U.S.C. § 1101(a)(43)(B) as "illicit trafficking in a controlled substance (as defined in section 802 of Title 21 . . . ) including a drug trafficking crime (as defined in section 841(c) of that title)."   Possession of a controlled substance for sale is unquestionably a "drug trafficking crime."  *See* 21 U.S.C. § 841(c); *Santos-Melitante v. Gonzales,* 161 Fed. Appx. 634 (9th Cir. 2005)(court found that the full range of conduct prohibited by California Health and Safety  Section 11378 is also punishable under federal law and the statute is therefore both a

federal drug trafficking crime punishable under the Controlled Substances Act [CSA] and an aggravated felony). Gutierrez was therefore ineligible for cancellation of removal in 2003.

### b. Defendant Was Not Eligible For "Voluntary Departure" In 2003.

As previously stated, an alien is eligible for voluntary departure if the alien (1) is physically present in the United States for at least one year prior to departure; (2) has good moral character for at least five years prior to departure; (3) no prior conviction for an aggravated felony; (4) demonstrates by clear and convincing evidence that the alien has the means to depart; and (5) lacks a prior voluntary departure. 8 U.S.C. § 1229c. As discussed above, Defendant was convicted of an aggravated felony in 1999 and was therefore ineligible for voluntary departure in 2003.

### 3. The 2003 Removal Could Also Serve as the "Predicate Element" Of The Instant Indictment.

The indictment need only set forth the elements of the crime it charges. *See, e.g., Almendarez-Torres v. United States*, 523 U.S. 224, 228 (9th Cir. 1998). The elements of the Section 1326 can be established without any reference to the 1997 removal proceedings challenged by the defendant. The language of Section 1326 is straightforward, applying to "Any alien who (1) has been denied admission, excluded, deported, or removed . . . and thereafter (2) enters, attempts to enter, or is at any time found in the United States. . . ." 8 U.S.C. § 1326; *see also United States v. Luna-Madellaga*, 315 F.3d 1224, 1226 (9th Cir. 2003) ("All that the statute requires is that the alien reenter the United States illegally after having been removed. . . .").

Gutierrez challenges the instant Indictment by attacking the validity of his 1997 deportation. *See* Def. Mot. to Dism. Indict., at 2. Given the valid 2003 removal, however, even if there were any defects in the 1997 removal proceedings, they would be irrelevant because this earlier deportation need not be an element of the current criminal proceedings. The reason that a criminal defendant is allowed to collaterally attack the removal proceedings underlying his Section 1326 prosecution is that these administrative proceedings serve as a "predicate element" in a criminal prosecution. *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1046 (9th Cir. 2004). The rationale is that since administrative proceedings lack the procedural safeguards

1
2
3
4
5

afforded criminal defendants, due process requires that there be some review of the administrative proceeding "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction." *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987). Since there is also a valid 2003 removal in this case, the 1997 removal need not play a "critical role" in the current criminal proceedings.

6
7
8
9
10

Gutierrez was convicted of an aggravated felony on July 7, 1999. On June 23, 2003, he was removed from the United States. On May 16, 2007, he was found in the United States, specifically in the Northern District of California. This simple chronology establishes the elements of a Section 1326 violation. Defendant's Motion, challenging removal proceedings from 1997, is irrelevant. The motion should be denied.

### IV. CONCLUSION

11
12
13
14
15

The Indictment charging Gutierrez with illegally reentering the United States in violation of 8 U.S.C. § 1326 should not be dismissed. For the foregoing reasons, the United States respectfully requests that the Court deny the defendant's motion to dismiss the Indictment.

16
17
18
19

Respectfully Submitted,
SCOTT N. SCHOOLS
United States Attorney

20
21
22

Dated: August 14, 2007

_____/s/_____

WENDY M. THOMAS
Special Assistant United States Attorney

23
24
25
26
27
28