1  BARRY J. PORTMAN
   Federal Public Defender
2  ELIZABETH M. FALK
   Assistant Federal Public Defender
3  450 Golden Gate Avenue
   San Francisco, CA  94102
4  Telephone:  (415) 436-7700

5  Counsel for Defendant GUTIERREZ

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

10 UNITED STATES OF AMERICA,                )
                                            )  No. CR 07-0334 CRB
11                        Plaintiff,        )
                                            )  **DEFENDANT GUTIERREZ' REPLY**
12         v.                               )  **IN SUPPORT OF MOTION TO**
                                            )  **DISMISS INDICTMENT ON**
13 JOSE JESUS GUTIERREZ,                    )  **GROUNDS THAT PRIOR**
                                            )  **DEPORTATION CANNOT SERVE**
14                        Defendant.        )  **AS PREDICATE FOR ILLEGAL**
                                            )  **REENTRY PROSECUTION**
15                                          )
                                            )  Date:   August 28, 2007
16                                          )  Time:   2:30 p.m.
                                            )  Court:  Hon. Charles R. Breyer
17                                          )
                                            )
18 _____ )

19

20         On March 24, 1997, Jose Jesus Gutierrez, a lawful permanent resident of the United States,

21 was accidentally and unlawfully deported from the United States in a mass group hearing conducted

22 entirely in English, a language foreign to him, at which the immigration judge ("IJ") did not ask him

23 a single question, advise him of a single right, or make a single inquiry.   The government now

24 wishes to prosecute Mr. Gutierrez under 8 U.S.C. § 1326 by using the same deportation proceeding

25 to establish the elements of the offense, regardless of the due process violations the occurred.  This,

26

the government cannot do.  This Court should grant the defendant's motion to dismiss the indictment.

## ARGUMENT

## I.    THE MARCH 24, 1997 DEPORTATION PROCEEDING VIOLATED DUE PROCESS

The government does not contest the fact that Mr. Gutierrez was a lawful permanent resident in 1997.  Nor do they seriously contest the egregious due process violations that occurred at Mr. Gutierrez' deportation hearing, as it would be legal error to do so.  For example, as stated by this court back in 2000, "The Ninth Circuit has explained that a waiver of appeal is not valid where the immigration judge seeks a mass waiver by silence from a group of aliens, *United States v. Gonzalez-Mendoza*, 982 F.2d 1014, 1017 (9th Cir. 1993), or when an attorney representing a large group of aliens waives the appellate rights of the entire group without any individualized discussion. *United States v. Proa-Tovar*, 975 F.2d 592, 595 (9th Cir. 1993)."  *United States v. Andrade-Partida*, 110 F.Supp. 2d 1260, 1263 (N.D. CA 2000); *see also United States v. Jiminez-Marmolejo*, 104 F.3d 1083 (9th Cir. 1996)(single attorney purporting to represent multiple aliens cannot collectively waive rights of aliens; government concedes the waiver is invalid under these circumstances).

Moreover, Mr. Gutierrez' hearing was conducted completely in English, a language he does not speak or understand to this day.  *See* Declaration of Jose Jesus Gutierrez, attached hereto as Exhibit A, at 13.  The fact that the deportation hearing was conducted entirely in English is a violation of Mr. Gutierrez' due process rights.  *See United States v. Leon-Leon*, 35 F.3d 1428 (filing to translate crucial inquiries at the deportation hearing violates the alien's due process rights).

The government instead argues that Mr. Gutierrez' written waiver of rights, conducted days before the deportation hearing outside the presence of the immigration judge,  is effective as a "knowing and voluntary" waiver.  This claim flies in the face of Ninth Circuit precedent.  A waiver of rights is not valid unless such a waiver is "considered and intelligent."  *Andrade-Partida*, 110 F.Supp at 1267.  The Court is instructed to "indulge every reasonable presumption against waiver."

1  *United States v. Lopez-Vasquez*, 1 F.3d 751, 753 (9th Cir. 1993). Here, there is no indication that the

2  Waiver of Rights form advised Mr. Gutierrez of his possible relief as a legal permanent resident.

3  The form does not mention 212(c) relief or instruct Mr. Gutierrez what to do if he is a legal

4  permanent resident. Moreover, Mr. Gutierrez attests that he remembers signing a paper in order to

5  det deported, but does not recall speaking to anyone about the paper or having it read to him. *See*

6  Exhibit A, Gutierrez Declaration, at ¶ 12. This form should not be considered a "considered and

7  intelligent" waiver of rights that an individual had as a lawful permanent resident of the United

8  States.

9      An immigration judge has a duty to inform an alien of his potential eligibility for relief. "The

10  duty of the IJ to inform an alien of his eligibility for relief is mandatory, and failure to do so can

11  constitute a violation of the alien's due process rights." *Id.* at 1268 (citing *Moran-Enriquez v. INS*,

12  884 F.2d at 422); *see also* 8 C.F.R. § 242.17(a). This is true whether or not the alien himself triggers

13  the conversation with the IJ regarding his eligibility, or whether or not the record indicates that the

14  alien is eligible for relief only by inference. *See Moran-Enriquez*, 884 F.2d at 422. The fact that Mr.

15  Gutierrez signed a paper waiving his right to an attorney does not mean he was waiving his right to

16  be informed of his eligibility for relief as a lawful permanent resident, much less his right to be

17  informed by an Immigration Judge as required under Ninth Circuit law. This Court should not give

18  Mr. Gutierrez' incomplete written waiver of certain rights effect as a knowing waiver of *all* of his

19  rights.

20      The government's citation to the contrary, *United States v. Galicia-Gonzalez*, 997 F.2d 602 (9th

21  Cir. 1993) is misplaced. In that case, the defendant waived his writes pursuant to a written

22  stipulation, specifically drafted for his case, which was reviewed and approved by the Immigration

23  Judge prior to his deportation. *Id.* at 603. More importantly, the case-specific stipulation in that case

24  was signed by an attorney representing Galicia, who attested that she had explained to him each of

25  the rights and that, in her opinion, he entered into the agreement with full knowledge. *Id.* The

26  stipulation was also entered into with consideration; immigration's promise to release the defendant

1  within 15 days.  *Id.*  Here, in contrast, the written waiver form described by the government is a

2  global, general, non-case-specific waiver form that was not explained by anyone, much less an

3  attorney or an immigration judge.  There is no indication that the IJ ever referred to the form during

4  the hearing, or even saw the form at any point in time. This waiver-of-rights form was no substitute

5  for the Code of Federal Regulation's mandatory requirement that an IJ explain the rights to an alien

6  that the alien is relinquishing.

7       Immigration agents acted negligently in this case.  Immigrations and Customs Enforcement

8  was in possession of Mr. Gutierrez' lawful permanent resident immigration documents, as

9  demonstrated by the fact that copies of his legal permanent resident card was contained in the A-File

10  delivered to defense counsel by the Assistant United States Attorney.  *See First Declaration of*

11  *Elizabeth Falk* (indicating source of immigration documents such as the copy of Mr. Gutierrez' green

12  card as coming from defendant's Alien File).  Moreover, Mr. Gutierrez remembers telling

13  immigration officials that he had a green card, but also remembers that he was not in physical

14  possession of his card at the time of the hearing and thus "assumed he was not going to be taken

15  seriously as someone who had a green card." *See* Exhibit A, Gutierrez Declaration at ¶ 15.  It is

16  understandable that a twenty-one year old, barely literate Spanish speaking person would not push

17  the issue with immigration authorities that he believed he had lawful resident status – or, that Mr.

18  Gutierrez would have had any idea that, as an owner of a green card, he was entitled to heightened

19  rights under the law.  Immigration officials should have followed up on Mr. Gutierrez' verbal claim

20  to hold a green card and asked him basic information – such as his social security number – which

21  could have established that he was telling the truth about his status.  The fact that Immigration

22  authorities instead elected to deport him *en masse* without further consideration was a negligent and

23  sad mistake.

24  //

25  //

26

*UNITED STATES V. GUTIERREZ*, 07-334 CRB; REPLY to        - 4 -
MOTION TO DISMISS INDICTMENT

II.    **MR. GUTIERREZ WAS PREJUDICED BY THE DUE PROCESS VIOLATIONS IN THE DEFECTIVE DEPORTATION HEARING**

It is true that, to succeed on a collateral attack of a deportation order, Mr. Gutierrez must show prejudice.  *See* 8 U.S.C. §1326(d)(3); *Proa-Tovar*, 975 F.3d at 595-596.  The government is incorrect, however, that Mr. Gutierrez was ineligible for relief as of March, 1997.  In addition to being eligible for pre- IIRAIRA Section 212(c) relief, which is essentially a waiver of deportation, Mr. Gutierrez was more  importantly eligible for cancellation of the Order to Show Cause, and was likely to completely avoid  deportation proceedings had the immigration officials properly characterized him as a legal  permanent resident.

A.    **Standard for Prejudice**

In order to establish that he was prejudiced by the defect in the deportation proceedings, Mr. Gutierrez "does not have to show that he actually would have been granted relief.  Instead, he must only show that he had a 'plausible' ground for relief from deportation." *Arrieta*, 224 F.3d at 1079.  Thus, Mr. Gutierrez need not show that, absent the IJ's error, he actually would have been granted relief, or even that there was a reasonable probability that he would have been granted relief.  *Muro-Inclan*, 249 F.3d at 1184.  It is sufficient that he show only that he had a *plausible* ground for such relief.

B.    **Mr. Gutierrez Had Made a Plausible Case for Relief from Deportation Under Three Grounds**

To assist the Court render a determination on the prejudice prong of Mr. Gutierrez' collateral attack, Mr. Gutierrez has enlisted the assistance of Angela Bean, Esq., an immigration attorney for over twenty years and a professor of law at Boalt Hall School of Law on the subject of immigration law.  See Exhibit B, Declaration of Angela Bean, at ¶ 1.  Ms. Bean has reviewed the A-File of Mr. Gutierrez, and has identified three areas of potential relief that would have prevented Mr. Gutierrez from suffering deportation back in March, 1997;

//

**1.     Outright Dismissal of the Order to Show Cause**

It is evident from the record that Mr. Gutierrez was deported as a result of the mistaken belief that he was undocumented; not that he was excluded as a result of his criminal convictions. *See* Bean Declaration, Exhibit B, at ¶ 4-6.  Had immigration officials believed Mr. Gutierrez that he had a green card and properly classified him as a legal permanent resident, Mr. Gutierrez' order to show cause would have been dismissed for lack of grounds. *Id.* at ¶ 8.  Mr. Gutierrez would not have needed to apply for relief from deportation under these circumstances, because the deportation would have been terminated. *Id.*  The convictions Mr. Gutierrez had suffered at that point did not render Mr. Gutierrez deportable. *Id.*  As such, the prejudice Mr. Gutierrez suffered as a result of his flawed deportation proceeding is the fact that he should not have been in proceedings in the first place, and had a good chance of successfully terminating the proceedings outright had he been properly handled by the immigration court.

**2.     INA Section 212(c) Relief Pre- IIRAIRA**

As stated by Ms. Bean, prior to the effective date of the Illegal Immigration Reform and Responsibility Act ("IIRAIRA") a form of relief under section 212(c) of the Immigration and Nationality act was available to legal permanent residents who had not been convicted of an aggravated felony. *Id.* at ¶ 9.  Although AEDPA eliminated 212(c) relief for all aliens who had been convicted of an aggravated felony, under the interim rules between the effective dates of AEDPA and IIRAIRA, 212(c) relief was still viable for individuals like Mr. Gutierrez, who had minor convictions. *Id.*  According to Ms. Bean, Mr. Gutierrez had a good chance of obtaining this relief, as he had multiple brothers and sisters who were U.S. citizens and/or legal permanent residents, and both his parents enjoyed residence status. Id. at ¶ 10-13; *see also* Exhibit A, Gutierrez Declaration at ¶ 3, 8.     Travel outside the United States did not disqualify a resident alien from applying for 212(c) relief pre-IIRAIRA.  Bean Declaration at ¶ 11.  As Mr. Gutierrez would have had a good chance of obtaining section 212(c) relief in March, 1997 had the IJ explained that he had a right to

1   seek relief in this regard, Mr. Gutierrez was prejudiced by the underlying defects in his deportation

2   hearing.

3            **3.      Voluntary Departure**

4            Even assuming**, *arguendo***, that the Immigration Service pursued its Order to Show

5   Cause and 212(c) relief was denied, Mr. Gutierrez would still have had a third option; voluntary

6   departure.  *See* Bean Declaration, Exhibit B, ¶ 14.  In contrast to the arguments of the government, it

7   is the opinion of Ms. Bean that Mr. Gutierrez' convictions did not disqualify a finding that he had

8   good moral character at the time of his deportation hearing.  *Id.*  There was no statutory or legal bar

9   to his obtaining voluntary departure, which was advantageous over deportation for a number of

10  reasons, including preservation of the right to return legally to the United States in the future.  Mr.

11  Gutierrez was also prejudiced by the due process violations at his hearing because he was not

12  informed of this relief and as a result, did not take advantage of this viable avenue of relief that was

13  open to him.

14           In sum, Mr. Gutierrez was prejudiced by the failure of the Immigration Service to honor his

15  legal resident status and deport him as an undocumented alien.

16  **II.   A REINSTATEMENT OF DEPORTATION IS NOT A LAWFUL ORDER OF
        DEPORTATION THAT CAN SERVE AS A PREDICATE ELEMENT IN A**
17  **PROSECUTION UNDER 8 U.S.C. § 1326.**

18           The government is mistaken that Mr. Gutierrez' 2003 deportation is a "removal" separate and

19  apart from the defective 1997 proceedings.  Rather, this 2003 deportation is simply a "reinstatement"

20  of the March 24, 1997 deportation proceeding discussed above.  *See* Declaration of Wendy Thomas

21  at Exhibits 6- 7 (establishing that the 2003 deportation was simply a reinstatement of the March,

22  1997 deportation order).  The distinction in terminology between a "removal" and a "reinstatement

23  of a prior deportation order" is important, as discussed below.

24           The government attempted to utilize the same *Morales-Izquierdo v. Gonzales*, 486 F.3d 484

25  (9th Cir. 2007) argument earlier this year against a different defendant with a valid claim to collateral

26  relief on *St. Cyr*. grounds.  *See generally United States v. Lopez-Hernandez*, 06-645 WHA.  In a

1  lengthy and eloquent decision, Judge Alsup soundly rejected the government's argument that

2  *Morales-Izquierdo* created a new rule of law allowing the government to prosecute defendants

3  criminally with reinstatements of deportations, rather than actual deportations that comport with due

4  process requirements.  *See* Exhibit C, Order Granting Motion to Dismiss Indictment, No. 06-0645

5  WHA, at p. 5-11 (attached as a courtesy to the Court); *see also United States v. Lopez-Hernandez*,

6  2007 U.S. Dist LEXIS 16251 at *9-21 (N.D. CA February 23, 2007).  In *Lopez-Hernandez*, the

7  district court tracks the historical distinctions between orders of deportation and orders reinstating

8  deportations.  The court then distinctly focuses on Morales-Iszquierdo's limitation of its holding to

9  the civil context, and holds that "the Morales-Izquierdo court's assessment of the reinstatement

10  process in the civil immigration context does not hold where criminal penalties are at stake."  *Id.* at

11  *19.

12      Although not binding upon this Court, Judge Alsup's sound reasoning is persuasive authority

13  rejecting the premise that the government can now prosecute Mr. Gutierrez for 8 U.S.C. § 1326 by

14  utilizing the 2003 reinstatement, as alleged by government counsel.  The government's arguments to

15  the contrary should be rejected by this Court for the same reason the Honorable Judge Alsup rejected

16  them.

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

1

**CONCLUSION**

2      For the aforementioned reasons, this Court should dismiss the indictment against Mr. Gutierrez

3 on the charge of illegal reentry, in violation of 8 U.S.C. § 1326, based on the Immigration Judge's

4 failure to advise Mr. Gutierrez, a former lawful permanent resident, of any of his rights under law,

5 including his rights to relief from deportation.  The utter failure of the Immigration Judge to advise

6 Mr. Gutierrez of his rights renders his prior deportation order, as well as any and all orders

7 reinstating that deportation, legal nullities that cannot serve as a predicate element for an illegal

8 reentry prosecution.

9 Dated: August 24, 2007

10

11                                           Respectfully submitted,

12                                           BARRY J. PORTMAN
                                             Federal Public Defender
13
                                                  /S/
14
                                             ELIZABETH M. FALK
15                                           Assistant Federal Public Defender

16

17

18

19

20

21

22

23

24

25

26