# Exhibit B

BARRY J. PORTMAN
Federal Public Defender
ELIZABETH FALK
Assistant Federal Public Defender
19th Floor Federal Building – Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant GUTIERREZ

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>JOSE JESUS GUTIERREZ<br>Defendant. | No. CR- 07-0334 CRB<br><br>DECLARATION OF ANGELA BEAN IN SUPPORT OF MOTION TO DISMISS INDICTMENT |

I, Angela Bean, DECLARE:

1. I am an attorney admitted to practice in all courts of the State of California and in this Court. I have been admitted to the State Bar of California since 1984 and have been certified as a specialist in Immigration Law by the California State Bar's Board of Legal Specialization. I taught immigration law at the University of California's Boalt Hall School of Law in the Spring of 2004 and 2005 and am a member of the American Immigration Lawyers' Association. I am submitting this declaration as an expert witness and certified specialist in Immigration and Nationality Law. I have personal knowledge

of the facts set forth in this declaration, and, if called as a witness, could testify to those facts under oath.

2.  I have reviewed the Alien ("A") File of Mr. Jose Jesus Gutierrez, provided to me by his counsel in the aforementioned indictment. It is my understanding that this A-File was provided to defense counsel by the Assistant United States Attorney in charge of the aforementioned indictment. It is my understanding that the defendant charged in the aforementioned indictment is Jose Jesus Perez Gutierrez, the individual for whom the A-File documents I was provided relate to. My review of the A-file provided by the indicates that at the time of his deportation on March 18, 1997, Mr. Jose Jesus Gutierrez was a lawful permanent resident of the United States;

3.  At the time of Mr. Gutierrez' deportation hearing, my understanding is that Mr. Gutierrez had been convicted of three offenses; (1) a traffic offense in 1994, Driving Without a License, in violation of California Vehicle Code Section 12500, for which he was sentenced to 4 days custody with credit for time served; (2) a misdemeanor hit and run offense in 1995, in violation of California Vehicle Code Section 20002(A), for which he was sentenced to one year of probation and fifteen days in jail, with credit for time served, and (3) Petty Theft, in violation of California Penal Code section 484, for which he was sentenced to ninety days of jail and 24 months of probation. See First Falk Declaration filed August 2, 2007 at Exhibit F (1996 conviction records); *see also* Second Falk Declaration filed August 24, 2007 at Exhibit A (1994 conviction records) and Exhibit B (1995 conviction records);

4.  It is apparent to me, from looking at the record, that Mr. Gutierrez was deported by mistake as an undocumented person. It is my understanding that this occurred at a deportation hearing conducted exclusively in English, where an attorney purported to

represent five individuals and waived the rights of each individual. In my opinion, this hearing did not comport with due process, as Mr. Gutierrez was not given an opportunity to explain to the judge that he was actually a legal permanent resident with heightened rights at a deportation proceeding. Had this occurred, there were a number of ways Mr. Gutierrez could have, and probably would have, avoided deportation;

## CANCELLATION OF THE ORDER TO SHOW CAUSE

5. It appears to me, from looking at the record in this case, that Mr. Gutierrez was mistakenly deported as an undocumented alien. It is my understanding that Mr. Gutierrez tried to explain that he had a green card, but was not in physical possession of the card. His physical possession of the card was not important; immigration officials still have a duty to investigate claims of legal presence prior to deporting someone;

6. Mr. Gutierrez was a legal resident at the time he was accidentally deported. It is my understanding that the basis of the deportation proceeding was the fact that he was undocumented; **not** that he had suffered any disqualifying prior convictions. The order to show cause in this matter is practically illegible, but is attached to my declaration as Exhibit A. From what I can read, it appears that undocumented status was the basis for the deportation of Mr. Gutierrez;

7. Had Mr. Gutierrez been afforded an opportunity to explain to Judge Phillips that he was actually a green card holder, there is a strong likelihood that the Judge would have ordered immigration officials to look more deeply into the matter. Records of Mr. Gutierrez' green card should have been readily available to immigration authorities;

8. Once it became apparent that Mr. Gutierrez was not an undocumented alien, there would have been no basis for the order to show cause. The order to show cause would have

been terminated, and it is possible that no subsequent charging document would have been filed at all, since his criminal record was not serious at that time. However, because he was arguably removable, a new Order To Show Cause should have been filed with the Immigration Court with the correct charges of deportability. Had that been done, Mr. Gutierrez would have been certainly eligible for bond at that point, and he would have been able to file for any relief available to a lawful permanent resident in that situation, namely, termination of proceedings if he was not deportable, 212[c] relief and voluntary departure in the alternative;

## 212(C) WAIVER - ELIGIBILITY

9. Even assuming, *arguendo*, that Mr. Gutierrez was actually placed in deportation proceedings, he had eligibility for relief as a green card holder. At the time of Mr. Gutierrez' deportation hearing on March 18, 1997, he was eligible for relief from deportation under Section 212(c) of the pre-IIRAIRA. As the Illegal Immigration Reform and Responsibility Act (IIRAIRA) had not yet gone into effect as of March 18, 1997[1], the relief technically known as "cancellation of removal" had not yet taken effect. However, for the purposes of this motion, the form of relief available to Mr. Gutierrez post Antiterrorism and Effective Death Penalty Act ("AEDPA") but pre-IIRARA was a form of relief under Section 212(c) of the Immigration and Nationality Act that is similar to the current statute, 8

[1] The effective date of IIRIARA was April 1, 1997. As such, Mr. Gutierrez would have technically been applying for post-AEDPA 212(c) relief. This form of relief was substantially similar to the relief codified today as "cancellation of removal", 8 U.S.C. § 1229(b).

U.S.C. § 1229(b) ("cancellation of removal").[2] None of Mr. Gutierrez' prior convictions (as of March 18, 1997) disqualified him for this relief. As such, he was eligible, given the fact that at the time of deportation he had no aggravated felony or other felony convictions of any kind;

10. In my opinion, having reviewed the file and having been provided facts about Mr. Gutierrez' life as of March 17, 1997, it is my opinion that he had a good chance of pre-IIRAIRA section 212(c) relief at the time of his deportation hearing;

11. The first reason for my opinion is that technically, Mr. Gutierrez met the requirements of pre-IRAIRA 212(c) relief. He had been a legal permanent resident since 1981, and had no aggravated felony convictions or any other disqualifying priors. It is important to note that as of March, 1997, travel outside the United States did not disqualify an individual from establishing that he had established domicile in the United States for seven years for the purposes of 212(c) relief. The rules dealing with the "stop time" limitations on eligibility for relief for cancellation of removal for certain lawful permanent residents were not in place until IIRIRA was effective, which was on and after April 1, 1997. What is important is that Mr. Gutierrez undisputably had legal permanent residency established in the United States between 1981 and 1997;

---

[2] *See* Former Law of 212(c) Relief, attached hereto as Exhibit B, at 1. ("The BIA has stated that the standard for exercising discretion that were established in 212(c) cases will apply in cancellation cases")(citing *Matter of C-V-T-*. Int. Dec. 3342 (BIA 1998)("providing that discretionary decisions in cancellation will follow the balancing test established for 212(c) in *Matter of Marin*, 16 I&N 581 (BIA 1978). Factors usually considered include rehabilitation and the strength of equities such as length of time in the United States, close family with lawful status, etc. balanced against the seriousness of the offense.")

12. The second reason for my opinion is that Mr. Gutierrez had a minor criminal history at the time of the deportation. The longest period of time Mr. Gutierrez had spent in custody at that point was ninety days.[3] He had no felony convictions and no violence in his record. Records of Mr. Gutierrez' convictions indicate that the facts of the hit-and-run offense were not aggravated; Mr. Gutierrez was driving at an unsafe speed and hit a chain link fence early in the morning.[4] There is no indication that alcohol was at issue in this offense. Finally, with respect to the petty theft, there are no records to indicate aggravating factors in the commission of this offense. For example, restitution was only ordered in the amount of $110.00.[5] Nor had Mr. Gutierrez suffered any criminal convictions indicating substance abuse and/or violent tendencies. In sum, the criminal convictions Mr. Gutierrez had were relatively minor as compared with other aliens seeking the same relief;

13. The third reason for my opinion is that Mr. Gutierrez had several family members living in the United States as lawful permanent residents at the time of his deportation hearing, including his at least five of his brothers, three of whom were United States citizens, and his mother and father. He was also working in the United States. He thus had substantial ties to the United States and would have been able to demonstrate the potential for

---

[3] *See* Record of 1996 conviction, First Falk Declaration (filed August 2, 2007) at Exhibit F.

[4] See Records of Conviction, 1995 Hit and Run Offense, attached to Second Falk Declaration as Exhibit B.

[5] *See supra*, n. 3.

rehabilitation;

**VOLUNTARY DEPARTURE**

14. At the time of the March 18, 1997 deportation hearing, even had Mr. Gutierrez been denied relief section 212(c) relief, and had the Order to Show Cause reissued, in my opinion there was a good chance that he would have been eligible for voluntary departure. *See* Immigration and Nationality Act section 244(e) of the Immigration and Nationality Act as in effect at the time of Mr. Gutierrez's deportation hearing for aliens not eligible for voluntary departure. Mr. Gutierrez does not definitively fall into the category of an individual who would have been denied voluntary departure for a number of reasons. Second, none of Mr. Gutierrez' prior convictions automatically precluded a finding that he did not have good moral character for purposes of voluntary departure. The Assistant United States Attorney is incorrect that Mr. Gutierrez' arrest (rather than a conviction) for possession of heroin would have automatically precluded a finding that Mr. Gutierrez had good moral character.

15. Had Mr. Gutierrez been informed of his rights to relief prior to March 18, 1997, he could have requested voluntary departure and was likely to have been granted same. However, since voluntary departure is a lesser form of relief that preservation of his lawful permanent residency status, it is most likely that he would have been granted the right to remain in the country on his then existing record.

//

//

**EFFECT OF GROUP REPRESENTATION OF ATTORNEY AND EFFECT OF HEARING PROCEDURES CONDUCTED IN ENGLISH**

16. As previously stated, it appears to me that Mr. Gutierrez' due process rights were violated at the deportation proceedings in a number of ways. First, from listening to the audio tape of the deportation hearing, it is apparent that an attorney claimed to represent all the aliens who were deported at Mr. Gutierrez' deportation hearing;

17. It is not surprising to me to hear that Mr. Gutierrez was not cognizant that an attorney was waiving his rights at the deportation hearing, particularly given the fact that the hearing was conducted only in English, without the benefit of a translator. It is my understanding that, even today, Mr. Gutierrez is not a fluent English speaker, and that he was not an English speaker in 1997;

18. I have observed numerous attorneys over the years at Immigration court attempt to represent mass numbers of aliens during deportation hearings in a similar manner as set forth on the audio tape of Mr. Gutierrez' deportation hearing. Often in my experience, pro bono attorney do not have time to speak meaningfully with each alien prior to the hearing, but will still speak on behalf of each alien to the Immigration Judge. It is my understanding that Mr. Gutierrez did not hire or pay any money to this attorney, and does not even recall speaking to any attorney. His recollection is credible, based on my training and experience observing deportation proceedings. It is very believable to me that an attorney would have approached Mr. Gutierrez with the understanding that he was undocumented, ask if he wanted

representation, and offer to represent him pro bono, without having any further discussion with him. His description of this experience is similar to many that I have witnessed while representing others in Immigration Court;

19. Mr. Gutierrez' situation appears to have been compounded by the fact that the deportation hearing was conducted entirely in English. As such, he was not able to comprehend the proceedings at all or understand what the attorney was saying on his behalf. Given the facts that (1) Mr. Gutierrez neither understands English now nor understood English in 1997, and (2) his lack of comprehension of English appears to have been known to immigration officials, the fact that his deportation proceeding was conducted entirely in English was a violation of Mr. Gutierrez' due process rights both as a legal permanent resident and as an alien facing deportation.

I declare under penalty of perjury that the foregoing is true and correct. Sworn this 24nd day of August, 2007, at San Francisco, California.

Angela M. Bean

ANGELA BEAN, ESQ.

# Exhibit a

U.S. Department of Justice
Immigration and Naturalization Service

**Application for Order to Show Cause and Bond/Custody Processing Sheet** (Relating Form I-213 must be attached)

| A. Name GUTIERREZ-Rodriguez, Jose Jesus AKA: | Office SFR | File A76 219 430 |
|---|---|---|
| Address In Service custody. | | Date 3/17/97 |

**FACTUAL ALLEGATIONS**

1025 5 21 male
A10830719

1. You are not a citizen or national of the United States
2. You are a native of Mexico and a citizen of Mexico;
3. You entered the United States at or near Calexico, CA on or about February, 1990; (Date)
4. You were not then inspected by an Immigration Officer.
5. (SEE REVERSE FOR ADDITIONAL ALLEGATIONS) ☐ Attorney of Record

Supporting evidence *(briefly itemize)*
I-213 , Conviction Documents

**B. ADDITIONAL FACTORS TO BE CONSIDERED FOR BOND CUSTODY DETERMINATION**

1. Is a petition, application pending for this alien or family member? (explain)

2. Total times apprehended
   Bonded before? ________ How many times? ________ Released o/r before ________
   Bond breached? ________ How many times? ________ Complied with o/r ________

3. Present state of health of subject, of spouse, children (if other than good, explain)

4. Total time in U.S., dates and location; residing with (Family members or others)

5. Personal property in U.S. (liquid and non-liquid assets)

6. Family members in U.S. (Wife, children, immediate relatives) address if different than subject:

7. Employment history: (Other than current)

8. Other factors i.e. false claim, attempted flight, unsupervised children at home, etc.

C. The undersigned recommends: ☐ V/D without OSC ☒ OSC Charge(s) *(Code)* EWI, ________ *(Page No.)* ________
☐ Trial Attorney ☐ Interpreter ________ *(Language)* ☐ Prosecution Violation
☒ W/A For the following reasons: CRIMINAL ALIEN
Signature [signature] Title SA
Supervisory Approval Signature [signature] Title ________

D. Approved as to legal sufficiency:

________ (Date) ________ (Signature) ________ (Title) ________ (Office)

E. Based on the above information I have set the following bond $ 50,000
☐ DD ☐ Acting DD ☐ DDD ☒ ADDI ☐ OIC ☐
3/18/97 (Date) [signature] (Signature) [initials]

Form I-265 (Rev. 4-15-81)Y

JJGR-0173

**U.S. Department of Justice**
Immigration and Naturalization Service

Order to Show Cause and Notice of Hearing

# ORDER TO SHOW CAUSE AND NOTICE OF HEARING
# *(ORDEN DE PRESENTAR MOTIVOS JUSTIFICANTES Y AVISO DE AUDIENCIA)*

*In Deportation Proceedings under section 242 of the Immigration and Nationality Act.*
*(En los trámites de deportación a tenor de la sección 242 de la Ley de Inmigración y Nacionalidad.)*

**United States of America:**
**(Estados Unidos de América:)**

**File No.** ______
***(No. de registro)***

**Dated** ______
**(Fechada)**

In the matter of *(En el asunto de)* ______ (Respondent) *(Demandado)*

Address *(Dirección)* ______

Telephone No. (Area Code) *(No. de teléfono y código de área)* ______

Upon inquiry conducted by the Immigration and Naturalization Service, it is alleged that:
*(Según las indagaciones realizadas por el Servicio de Inmigración y Naturalización, se alega que:)*

1) You are not a citizen or national of the United States;
*(Ud. no es ciudadano o nacional de los Estados Unidos)*

2) You are a native of ______ and a citizen of ______ ;
*(Ud. es nativo de)* *(y ciudadano de)*

3) You entered the United States at or near ______ on or about ______ ;
*(Ud. entró a los Estados Unidos en o cerca de)* *(el día o hacia esa fecha)*

**U.S. Department of Justice**
Immigration and Naturalization Service

Order to Show Cause and Notice of Hearing

Continuation Sheet
*(Hoja complementaria)*

Respondent [illegible]
*(Demandado)*

Dated [illegible]
*(Fechada)*
File No. [illegible]
*(No. de registro)*

**AND** on the basis of the foregoing allegations, it is charged that you are subject to deportation pursuant to the following provision(s) of law:
***(Y según los alegatos anteriores, se le acusa de estar sujeto a deportación de acuerdo con la(s) siguiente(s) disposicion(es) de la ley:)***

[illegible]

[illegible]

**WHEREFORE, YOU ARE ORDERED** to appear for a hearing before an Immigration Judge of the Executive Office for Immigration Review of the United States Department of Justice at:
***(POR LO CUAL, SE LE ORDENA** comparecer ante un juez de inmigración de la Oficina Ejecutiva de Revisión de Inmigración del Departamento de Justicia de los Estados Unidos en:)* [illegible]

Address [illegible]
*(Dirección)*

On ______________________ At ______________ .m.
*(Fecha)* *(Hora)*

and show cause why you should not be deported from the United States on the charge(s) set forth above.
*(y mostrar motivos justificantes por cual no deberia ser deportado de los Estados Unidos por los cargos expresados anteriormente.)*

Dated ______________________
*(Fechada)*

Signature of Issuing Officer ______________________
*(Firma del funcionario que la expide)*

City and State of Issuance ______________________
*(Ciudad y Estado donde se expide)*

Title of Issuing Officer ______________________
*(Título del funcionario que la expide)*

This Order to Show Cause shall be filed with the Immigration Judge of the Executive Office for Immigration Review at the address provided below. You must report any changes of your address or telephone number in writing to this office:

Debe presentar esta Orden de Presentar Motivos Justificantes a la Oficina Ejecutiva de Revisión de Inmigración en la siguiente dirección. Debe notificar cualquier cambio de su domicilio o número de teléfono por escrito a:

**The Office of the Immigration Judge**

**Certificate of Translation and Oral Notice**

This Order to Show Cause ☒ was ☐ was not read to the named alien in the Spanish language, which is his/her native language or a language which he/she understands.

3/18/97 — Date

Signature

Julie Ramirez DEO — Printed Name and Title of Translator

Address of Translator (If other than INS employee) or office location and division (if INS employee)

(If oral notice was not provided please explain)

| **Manner of Service** | Alien's Right Thumb Print |
|---|---|
| ☒ Personal Service to Alien<br>☐ Certified Mail - Return Receipt Requested<br>☐ Alien<br>☐ Counsel of Record | |

**Certificate of Service**

This Order to Show Cause was served by me at SFR on 3/18 1997 at 8:30 p m.

Officer's Signature — Printed Name: Julie Ramirez — Title: DEO — Office: SFR

Alien's Signature (acknowledgment/receipt of this form)
*(Firma de extranjero/acuse de recibo)*

**Request for Prompt Hearing and Waiver of 14-Day Minimum Period**
***(Solicitud de audiencia inmediata y renuncia al plazo mínimo de 14 días)***

To expedite determination of my case, I request an immediate hearing, and waive my right to the 14 day notice.
*(Para agilizar la decisión sobre mi caso, solicito una audiencia inmediata y renuncio a mi derecho a un plazo mínimo de 14 días.)*

Signature of Respondent
*(Firma de demandado)*

Date
*(Fecha)*

# Exhibit b

# Appendix 11-A
# The Former Law Relating to Section 212(c) Relief

The following is a reprinting of the section in the 1995 edition of *California Criminal Law and Immigration* relating to § 212(c) relief. It is for use by counsel dealing with cases still in § 212(c) proceedings, who may find it difficult to obtain an overview of the former law.[1] The law described here does *not* apply to cancellation of removal for permanent residents under INA § 240A(a), with one exception: the BIA has stated that the standards for exercising discretion that were established in 212(c) cases will apply in cancellation cases.[2]

The section has *not* been updated to be consistent with other changes in the law that have occurred since 1995.

***California Criminal Law and Immigration***
**1995 Edition**
**§11.10 Immigration Waivers: Section 212(c) Relief**

**Requirements:**

**Lawful permanent resident with 7 years of lawful unrelinquished domicile**
**Not deportable under the firearms/explosives ground**
**Not incarcerated for five years for one or more aggravated felonies**

A lawful permanent resident who has maintained a lawful unrelinquished domicile in the United States for seven years may apply for a discretionary waiver and relief from deportation or exclusion under INA §212(c), 8 USC §1182(c). A permanent resident can apply for this relief even if she has been convicted of serious offenses such as narcotics violations, certain aggravated felonies or crimes involving moral turpitude. The relief is discretionary. Generally, the issues at hearing are whether the person has shown rehabilitation and the strength of equities such as length of time in the U.S., close family with lawful status, etc. balanced against the seriousness of the offense. In cases involving particularly grave offenses, the respondent must demonstrate unusual and outstanding equities, and

---

[1] See also National Lawyers Guild, Immigration Law and Defense, section 8.5 (Clark Boardman).

[2] Matter of C-V-T-, Int. Dec. 3342 (BIA 1998) (granting relief to alien whose single minor drug offense was not a particularly serious crime or ongoing threat, and providing that discretionary decisions in cancellation will follow the balancing test established for 212(c) in Matter of Marin, 16 I&N 581 (BIA 1978)). Factors usually considered include rehabilitation and the strength of equities such as length of time in the U.S., close family with lawful status, etc. balanced against the seriousness of the offense. In cases involving particularly grave offenses, the respondent had to demonstrate unusual and outstanding equities, and relief still could be denied. See, e.g., Matter of Buscemi, Int. Dec. 3058 (BIA 1988), Matter of Edwards, Int. Dec. 3134.