IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>        Plaintiff,<br>  v.<br>JOSE JESUS GUTIERREZ RODRIGUEZ,<br>        Defendant.                / | No. C 07-00334 CRB<br>**ORDER DENYING MOTION TO DISMISS INDICTMENT** |

Defendant Jose Jesus Gutierrez Rodriguez moves this court to dismiss the government's indictment charging Gutierrez with violating 8 U.S.C. § 1326 for illegal reentry after deportation. Gutierrez argues that the indictment should be dismissed because it is based on a 1997 deportation order that was entered after constitutionally defective proceedings. Although the 1997 deportation proceedings violated Gutierrez's due process rights, Gutierrez has not established that he was prejudiced by the constitutional defect. Accordingly, the motion to dismiss is DENIED.

**BACKGROUND**

Jose Jesus Gutierrez was born in Mexico on October 23, 1975. At the age of five, Gutierrez was granted legal permanent resident status when he obtained an I-551 card lawfully in July of 1981. After admission in 1981, Gutierrez lived in both Mexico and the United States, but his absences from this country were extensive. Indeed, government records taken from the testimony of Gutierrez's half-brother indicate that Gutierrez "had

been away from the U.S." between 1982-93 before he returned to the United States to attend school.

After returning to the United States in 1993, Gutierrez was arrested and convicted for a variety of offenses. In 1994, Gutierrez was convicted of a misdemeanor traffic violation. In 1995, Gutierrez was convicted under California Vehicle Code § 20002(a), which prohibits drivers who damage property from leaving the scene without notifying the property owner, and he served 15 days in jail. In 1996, Gutierrez was convicted of petty theft, a misdemeanor, and received a 90-day sentence. See Cal. Penal Code § 484.

In March of 1997, Gutierrez was arrested for unlawful possession of a controlled substance for sale. See Health & Safety Code § 11351. Prior to the completion of that case, however, Gutierrez was deported to Mexico on March 25, 1997.

After his deportation, Gutierrez reentered the United States on or about September 10, 1998. He was arrested in 1999 and charged with: (1) possessing for sale methamphetamine, see Cal. Health & Safety Code § 11378; (2) transporting, importing, selling or giving away methamphetamine, see id. § 11379(a); and (3) possessing, using and controlling a false compartment with the intent to conceal and transport methamphetamine, see id. § 11366.8(a). Gutierrez was convicted of the possession for sale and transportation counts. In addition, Gutierrez was convicted for possession of narcotics under California Health & Safety Code § 11350 for his 1997 arrest.

Finally, in April of 2003, Gutierrez was arrested for transportation, sale or distribution of a controlled substance and was removed from the United States pursuant to an order reinstating his 1997 removal. He was found by customs agents on May 16, 2007 at the San Quentin State Prison and indicted for illegal reentry after deportation.

## DISCUSSION

Gutierrez argues that his 1997 deportation cannot serve as a predicate for prosecution under § 1326 because the prior deportation was fundamentally flawed. To prevail in a collateral attack, the defendant must show that he: (1) exhausted administrative remedies that were available to him; (2) the deportation proceeding at which the order was issued denied

2

the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. See United States v. Pallares-Galan, 359 F.3d 1088, 1095 (9th Cir. 2004). The government does not dispute that Gutierrez satisfies the first two factors. Accordingly, Gutierrez's due process argument turns on whether he was deported pursuant to an order whose entry was fundamentally unfair. An underlying deportation order is fundamentally unfair if: (1) the defendant's due process rights were violated by defects in the underlying deportation proceeding; and (2) the defendant suffered prejudice as a result of the defects. See id.

### A. Due Process Violation

Gutierrez was deported in 1997 after a hearing conducted by an Immigration Judge ("IJ") before a group of alleged aliens. The transcript of the en masse hearing is brief, and reveals that the IJ never orally informed Gutierrez or the other subjects of their right to appeal or to seek relief from deportation. The IJ asked counsel, in English, whether any of the subjects wished to appeal and counsel declined on their behalf. The IJ did not, however, directly ask Gutierrez whether he wished to appeal or whether Gutierrez understood that he had the right to appeal.

"It is 'mandatory' under the Due Process Clause that an IJ inform an alien of his or her ability to appeal a removal order during a removal proceeding." United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1048 (9th Cir. 2004). The government argues that waivers are valid when taken from defense counsel as well as the defendant, but the Ninth Circuit has squarely held that for purposes of the due process inquiry, the alien himself must waive the right to appeal for the deportation hearing to comport with due process. It is "of no significance to the due process inquiry" that the IJ asked counsel if he wanted to appeal the removal order because the inquiry "focuses on whether [Gutierrez] personally made a 'considered and intelligent' waiver of his appeal." Id. at 1049 n.8 (citation omitted)

3

1  (emphasis in original). Accordingly, the IJ's failure to inform Gutierrez of his right to appeal
2  was a violation of Gutierrez's due process rights.[1]

3      The government argues that Gutierrez's personal waiver can be inferred from two
4  documents. But the government bears the burden of proving waiver, see Brewer v. Williams,
5  430 U.S. 387, 404 (1977), and neither document satisfies the government's burden in this
6  case. First, the government has submitted notes taken by an INS agent, which record that an
7  appeal was waived in Gutierrez's case. There is no way to discern, however, whether the
8  note is based on a waiver made personally by Gutierrez or whether the agent believed that
9  Gutierrez waived his right to appeal through counsel. In short, the notes do not support the
10 conclusion that Gutierrez himself understood that he had a right to appeal.

11     Second, the IJ indicated on the deportation order that Gutierrez had waived the right to
12 appeal. Again, however, it cannot be discerned from that order what the IJ's understanding
13 was based upon. It is just as likely – if not more so – that the IJ believed Gutierrez waived
14 the right to appeal because his lawyer declined an appeal in his name, rather than that
15 Gutierrez was personally informed of his right to appeal and personally declined to exercise
16 that right.

17 B. Prejudice

18     Even if Gutierrez's due process rights were violated, the indictment can only be
19 dismissed if Gutierrez can show that he suffered prejudice as a result of the defects in his
20 deportation proceeding. See Pallares-Galan, 359 F.3d at 1103. To prove prejudice,
21 Gutierrez need not show that he actually would have been granted relief; rather, he must
22 show only that he had a "plausible" basis for seeking relief from deportation on appeal. See

---

[1] The Ninth Circuit has also held that mass silent waiver does not satisfy due process. See United States v. Lopez-Vasquez, 1 F.3d 751, 755 (9th Cir. 1993) ("We conclude mass silent waiver impermissibly 'presume[s] acquiescence' in the loss of the right to appeal and fails to overcome the 'presumption against waiver.'") (citation omitted). Indeed, a hearing is not even sufficient if the IJ engages in a group colloquy that explains the appeals process, requires an audible response that all subjects of the proceeding understand they have the right to appeal, and invites individuals to raise their hand if they want to appeal. See United States v. Zarate-Martinez, 133 F.3d 1194, 1197-98 (9th Cir. 1998). The hearing in this case fell well short of the hearing provided in Zarate-Martinez, as Gutierrez was never asked to provide an audible or visual response indicating that he wished to exercise his right to appeal.

*United States District Court*
*For the Northern District of California*

1 id.; see also Ubaldo-Figueroa, 364 F.3d at 1050. "Specifically, [Gutierrez] is entitled to the dismissal of his indictment if, upon a review of the record, it appears that an IJ could have concluded that his potential claim for relief from deportation would be 'plausible.'" Id. at 1104; see also Morales-Izquierdo v. Gonzales, 486 F.3d 484, 495 (9th Cir. 2007) (en banc) ("To show prejudice, Morales must present plausible scenarios in which the outcome of the proceedings would have been different if a more elaborate process were provided.") (citation and internal quotations omitted).

Even if Gutierrez was properly informed of his right to appeal, it is not plausible that he could have successfully challenged the deportation order through further proceedings. Gutierrez's argument that there were three forms of relief he could have plausibly attained is unconvincing.

*1. Outright Dismissal*

First, Gutierrez asserts that he was deported as a result of the mistaken belief that he was undocumented. Therefore, Gutierrez argues, the Order to Show Cause would have been dismissed outright if Gutierrez had the opportunity to demonstrate on appeal that he was a legal resident. Unfortunately, this argument was raised for the first time in Gutierrez's reply brief, and the government was not provided with an opportunity to respond. Accordingly, the argument is deemed waived. See Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[A]rguments not raised by a party in its opening brief are deemed waived.").

*2. Cancellation of Removal*

At the time of Gutierrez's March 25, 1997 deportation, an alien with legal permanent residence status could apply for cancellation of removal provided he: (1) was lawfully admitted for permanent residence for not less than five years; (2) resided in the United States continuously for seven years after having been admitted for status; and (3) had not been convicted of an aggravated felony. See 8 U.S.C. § 1229b (1997).

Gutierrez would not have qualified for cancellation of removal because, according to statements made by his half-brother upon reentry into the United States in January of 1993, Gutierrez resided in Mexico between approximately 1982-92. Nowhere does Gutierrez

5

dispute the accuracy of his half-brother's statement. Indeed, Gutierrez acknowledges in his affidavit that between 1981 and 1997, he lived in, among other places, Jalisco, Mexico. Gutierrez also admitted that after coming to the United States in 1981, he traveled to Mexico "for extended periods of time."

Gutierrez argues that he could have plausibly qualified for cancellation of removal because travel outside the United States would not have precluded a finding of continuous legal residence. To be sure, <u>temporary</u> travel abroad would not necessarily have precluded a finding of continuous legal residence. <u>See</u> 8 U.S.C. § 1182(c) (1996); <u>Raya-Ledesma v. INS</u>, 55 F.3d 418, 419 (9th Cir. 1994) (extending application of § 1182 from context of exclusion proceedings to deportation proceedings). But Gutierrez points to no case that suggests it is plausible an IJ would conclude that Gutierrez resided in the United States continuously for seven years between 1981-88, even though he also "resided" in Mexico during that time.

Gutierrez was not a continuous resident of the United States for the seven years that succeeded his receipt of legal permanent resident status in 1981. Accordingly, Gutierrez has not established that he was prejudiced by his inability to seek cancellation of removal on appeal.

*3. Voluntary Departure*

Finally, Gutierrez argues that he was eligible for voluntary departure at his 1997 hearing because he: (1) had been in the United States for at least one year prior to departure; (2) demonstrated good moral character for at least 5 years prior to departure; (3) had no prior conviction for an aggravated felony; (4) demonstrated by clear and convincing evidence that he had the means to depart; and (5) lacked a prior voluntary departure. <u>See</u> 8 U.S.C. § 1229c.

It is implausible, given Gutierrez's criminal history, that an IJ would conclude that he had the good moral character requisite to justify voluntary departure relief. "Voluntary departure is a privilege, not a right." <u>Villanueva-Franco v. INS</u>, 802 F.2d 327, 329 (9th Cir. 1986). Gutierrez's history revealed a pattern of increasingly destructive and dangerous behavior, beginning with a traffic violation in 1994, continuing with convictions for hit and

6

run and petty theft in 1995 and 1996 – for which Gutierrez served 15 and 90 days in jail, respectively – and culminating with Gutierrez's arrest for possession for sale of a controlled substance in 1997.

On the other side of the scale, Gutierrez has not offered persuasive evidence weighing in favor of a finding of good moral character, such as school record, family background, employment history or financial status.  See Torres-Guzman v. INS, 804 F.2d 531, 533 (9th Cir. 1986) (listing factors that must be considered by IJ in determining whether alien had good moral character).  According to Gutierrez's declaration, four of his brothers and sisters lived in the United States at the time of the 1997 hearing.  At the same time, at least three more brothers and sisters lived in Mexico.  Despite the presence of some family members in the United States, it is simply not plausible that an IJ looking at Gutierrez's troubling and increasingly destructive criminal history would conclude that he had exhibited good moral character in the five years preceding deportation.

Gutierrez has not established that he was prejudiced by the constitutional errors that infected his 1997 deportation proceeding.  Accordingly, his motion to dismiss the government's indictment is DENIED.

**IT IS SO ORDERED.**

Dated: September 21, 2007

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

7