JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

WENDY THOMAS (NYBN 4315420)
Special Assistant United States Attorney

    450 Golden Gate Avenue
    San Francisco, California  94102
    Telephone: (415) 436-6809
    Facsimile: (415) 436-7234
    E-Mail: wendy.thomas@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 07 0334 CRB |
| Plaintiff, | |
| v. | **UNITED STATES' SENTENCING MEMORANDUM** |
| JOSE JESUS GUTIERREZ RODRIGUEZ, | |
| Defendant. | |

## I. INTRODUCTION

On October 17, 2007, the defendant pled guilty to the sole Count of the captioned Indictment, a violation of 8 U.S.C. § 1326, being a previously deported alien found in the United States. The defendant pled "open" in that there was no plea agreement between the parties. Sentencing has been set for January 30, 2008.

The United States agrees with U.S. Probation's calculation of the defendant's Criminal History Category of VI and believes the Court should adopt an Offense Level of 21. This would yield an applicable Guidelines range of 77-96 months. The United States respectfully requests that the Court sentence the defendant to 77 months of imprisonment, the low-range of the Guidelines. In the view of the United States, a sentence at the low end of the range is wholly

"sufficient, but not greater than necessary, to comply with the purposes" of the statutory sentencing scheme.  18 U.S.C. § 3553(a).

## II.  DISCUSSION OF GUIDELINES CALCULATIONS

### A.   U.S.S.G. § 2L1.2(a) (Base Offense Level)

The defendant pled guilty to a violation of 8 U.S.C. § 1326, which specifically references U.S.S.G. § 2L1.2.  *See* Guidelines Manual Appendix A.  Accordingly, the defendant's base offense level should be 8.

### B.   U.S.S.G. § 2L1.2(b)(1)(A) (Drug Trafficking Offense)

#### 1.   Defendant's 1999 conviction constitutes a drug-trafficking offense using the categorical *Taylor* analysis.

Pursuant to U.S.S.G. § 2L1.2(b)(1)(A), the base offense level is increased by 16 levels "[i]f the defendant previously was deported, or unlawfully remained in the United States, after ... a conviction for a felony that is a drug trafficking offense for which the sentence imposed exceeded 13 months."  The defendant's 1999 conviction under California Health and Safety Code Section 11378 for possession of a controlled substance for sale qualifies as such a conviction.

The term "drug trafficking offense" is defined in Application Note 1(B)(iv) to mean "an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 2L1.2., Application Note 1(B)(iv).

On July 7, 1999, the defendant pled guilty to possession of a controlled substance for sale *and* transportation, sale, or distribution of a controlled substance (Contra Costa County Superior Court, Docket # 172024-2; DA No. R 99 001860-6), in violation of Cal. H. & S. Code §§ 11378 and 11379(a).  He received a sentence of two years in prison.  *See* Exhibit 1 (Felony Complaint); Exhibit 2 (Abstract of Judgment); and Exhibit 3 (Change of Plea Hearing).

In order to determine whether this conviction qualifies as a "drug trafficking offense," courts employ *Taylor*'s categorical and modified categorical analyses.  *See Taylor v. United*

*States*, 495 U.S. 575 (1990). In *United States v. Valle-Montalbo*, the Ninth Circuit determined that a conviction under Cal. H. & S. § 11378 categorically constitutes a drug trafficking offense under U.S. Sentencing Guidelines Manual § 2L1.2(b)(1)(A) and that the "district court properly applied the 16-level enhancement to Valle-Montalbo's sentence for illegal re-entry." *United States v. Valle-Montalbo*, 474 F.3d 1197, 1201 (9th Cir. 2007), *cert. denied* 128 S. Ct. 214 (2007).

Defendant's guilty plea in the 1999 case unequivocally establishes that he pled guilty to a drug trafficking offense as defined by U.S.S.G. § 2L1.2(b)(1)(A), Application Note 1(B)(iv). The defendant's Offense Level should be enhanced 16 levels for the 1999 conviction where he received a two year prison sentence. *See United States v. Sandoval-Sandoval*, 487 F.3d 1278 (9th Cir. 2007)(the district court may properly rely on the abstract of judgment in determining the length of the defendant's prior sentence).

### C.   U.S.S.G. § 3E1.1 (Acceptance of Responsibility)

The United States respectfully recommends that the defendant be entitled to a two-point reduction in offense level under U.S.S.G. § 3E1.1(a) because he has "clearly demonstrate[d] acceptance of responsibility for his offense" under the terms of § 3E1.1(a) by truthfully admitting to the facts establishing his guilt.

The defendant is likewise entitled to a third point for acceptance of responsibility under the distinct standard set forth in U.S.S.G. § 3E1.1(b). To qualify for this third point, the defendant must have "assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently." § 3E1.1(b). Because the defendant pled guilty in this case in a timely manner that avoided any preparation for trial, the United States hereby moves that he be granted this third point as well.

### D.   U.S.S.G. § 4A1.1 (Criminal History Category)

The United States concurs with the judgment of the U.S. Probation Officer that the crime in this case is a continuing offense and that the offense begins at the time the defendant illegally

reenters the country and does not become complete unless or until the defendant is found by [Immigration officials] in the United States. In *United States v. Godinez-Rabadan*, the court determined that exact date on which a defendant is found in the United States is not an element of a § 1326 violation and that the violation is considered a continuing offense. *United States v. Godinez-Rabadan,* 289 F.3d 630 (9th Cir. 2002); *United States v. Reyes-Pacheco*, 248 F.3d 942 (9th Cir. 2001); *United States v. Reyes-Nava*, 169 F.3d 278 (5th Cir. 1999); *United States v. Alvarado-Santilano*, 434 F.3d 794 (5th Cir. 2005).

Here, the defendant was deported on June 23, 2003. PSR ¶ 4. He was arrested on December 31, 2004, for presenting false identification to a peace officer, and was convicted of this charge on December 12, 2006. PSR ¶ 31. Thus, the illegal reentry commenced at the first date the United States can verify the defendant was present in the country after the 2003 deportation, December 31, 2004. The illegal reentry continued to the point that he was found by Immigration Officials, on May 16, 2007. PSR ¶ 4. Therefore, the correct date to calculate the defendant's criminal history is from the date the offense commences, on December 31, 2004.

### III.  OTHER § 3553(a) FACTORS

In light of the *Booker* Court's severance of 18 U.S.C. § 3553(b)(1) from the federal sentencing statute, sentencing courts are obliged to consider the factors set forth in § 3553(a), including the need for the sentence to reflect the seriousness of the offense, afford adequate deterrence, protect the public from further criminal conduct by the defendant, and avoid sentencing disparities among similarly situated defendants. The United States submits that a low-range sentence under an Offense Level of 21, within the advisory Guidelines range, is both reasonable and appropriate in this case.

The United States makes this recommendation in part because the defendant lacks mitigating personal history or characteristics suggesting that a downward departure or variance would be warranted. § 3553(a)(1). He was raised by two parents and has five older half-siblings and four siblings who reside both in Mexico and the United States. PSR ¶ 38. He successfully obtained a Resident Alien Card in 1981, which he lost as a result of his criminal conduct. PSR ¶ 38. He had a "happy" childhood and got along with his parents and his siblings. PSR ¶ 39. He

has a wife who lives in Mexico with his two children. PSR ¶ 40. He has good mental, physical, and emotional health. PSR ¶ 41 and 42. He reported no abuse in his upbringing. His personal drug use appears to be intermittent. PSR ¶ 43. Despite having started life with a number of factors working in his favor, the defendant has failed to contribute to his community and instead has persistently engaged in criminal conduct since he was a young man. Taken together, these circumstances suggest that the defendant's ties to Mexico are strong enough that there is no pressing need to violate the law by illegally returning to the United States after being convicted of a serious drug-trafficking felony.

The defendant has an extensive criminal history which provides aggravating circumstances in support of a substantial sentence. § 3553(a)(1). The defendant's criminal history, qualifying him for Criminal History Category VI, demonstrates his clear, willful, and repeated inability to comply with the laws of this country. *See United States v. Segura-Del Real*, 83 F.3d 275, 279 n.1 (9th Cir. 1996) ("[D]efendants in Category VI, the highest criminal history category, are, not surprisingly, the defendants who demonstrate the most limited likelihood of successful rehabilitation and the greatest likelihood of recidivism."); *United States v. Carrillo-Alvarez*, 3 F.3d 316, 320 (9th Cir. 1993) ("[D]efendants in category VI are by definition the most intractable of all offenders."). The defendant has a long history of convictions, including the following: 1994 misdemeanor driving without a license conviction (PSR ¶ 23); 1995 misdemeanor petty theft conviction (PSR ¶ 24); 1995 misdemeanor hit and run and unlicensed driver conviction (PSR ¶ 26); 1996 misdemeanor petty theft conviction (PSR ¶ 25); 1996 misdemeanor disorderly conduct conviction (PSR ¶ 27); 1999 felony possession of a controlled substance [stemming from an arrest made in 1997] (PSR ¶ 28); 1999 felony possession of a controlled substance for sale *and* transportation, sale, or distribution of a controlled substance conviction (PSR ¶ 30); 2000 misdemeanor driving while under the influence (PSR ¶ 29); 2006 misdemeanor providing false information to a police officer conviction [stemming from an arrest made in 2004] (PSR ¶ 31).

The United States requests that the Court evaluate the defendant's criminal record in context with the dates that defendant has actually been in the country. The defendant was born

1  in Mexico in 1975 and issued a Resident Alien Card in 1981. PSR ¶ 38 and 39. Shortly
2  thereafter, defendant returned to Mexico and lived in Mexico until 1993. On January 29, 1993,
3  defendant and his half-brother re-entered the United States from Mexico on a flight aboard
4  Mexicana Airlines from Guadalajara to San Francisco. *See* Exhibit 4 (Boarding Pass).
5  According to information taken from defendant and defendant's half-brother taken at the time,
6  defendant had been living in Mexico for the previous eleven years. *See* Exhibit 5 (Order to
7  Appear for Deferred Inspection). He was present in the United States between 1993 until his
8  first deportation in 1997. Between 1993 (when the defendant re-entered the country) and 1997
9  (when he was first deported), the defendant sustained five criminal convictions and was arrested
10 on felony charges that remained unresolved until he was rearrested in 1999. PSR ¶¶ 23-29. In
11 1999, the defendant pled to three felony drug charges and, while incarcerated, pled to a driving
12 while under the influence case that commenced prior to the 1999 felony drug arrest. PSR ¶¶ 28
13 and 30. In April of 2003, defendant was arrested for possession of a controlled substance for
14 sale but charges were never filed. PSR ¶ 35. Instead, defendant was again deported to Mexico
15 on June 23, 2003. PSR ¶ 4. Defendant was arrested in December of 2004 for providing false
16 identification to a police officer, which he subsequently pled guilty to in 2006. PSR ¶ 31.

17     Taken as a whole, the defendant's criminal record demonstrates that there is no
18 substantial period of time during which the defendant has been in this country as an adult and *not*
19 engaged in criminal conduct. Despite the fact that the defendant has substantial ties to Mexico,
20 the defendant repeatedly returns to the United States and engages in criminal activity. The
21 defendant's extensive criminal record and obvious failure to rehabilitate himself support a
22 lengthy sentence to "promote respect for the law," § 3553(a)(2)(A), to "afford adequate
23 deterrence to criminal conduct," § 3553(a)(2)(B), and "to protect the public from further crimes
24 of the defendant," § 3553(a)(2)(C).

25     Finally, a Guidelines-range sentence would especially respect "the need to avoid
26 unwarranted sentence disparities among defendants with similar records who have been found
27 guilty of similar conduct." § 3553(a)(6). The U.S. Sentencing Commission's Guidelines
28 Manual provides a well-considered, nationally applicable standard, and there are no factors

UNITED STATES' SENTENCING MEMORANDUM
CR 07 0334 CRB                                6

suggesting that the defendant should receive a sentence any lower than those routinely meted out to criminal alien defendants with similar records around the United States.

## IV.  CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court adopt the Guidelines calculation of the United States, and find Offense Level 21, Criminal History Category VI applicable to defendant, yielding a sentencing range of 77–96 months.  The United States further respectfully requests that the Court find that a sentence within this range is "reasonable" under the factors set forth in 18 U.S.C. § 3553(a).  In conclusion, the United States respectfully recommends that the Court sentence the defendant to 77 months of imprisonment, three years of supervised release, and payment of a $100 special assessment.

DATED: January 23, 2008        Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney

_____/s/_____
WENDY THOMAS
Special Assistant United States Attorney