BARRY J. PORTMAN
Federal Public Defender
ELIZABETH M. FALK
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant GUTIERREZ

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | No. CR 07-334 CRB |
| vs. | ) ) | **DEFENDANT'S SENTENCING MEMORANDUM** |
| JOSE JESUS GUTIERREZ, | ) ) | Date: February 13, 2008 |
| Defendant. | ) ) ) | Time: 2:15 p.m. Court: The Honorable Charles R. Breyer |

**INTRODUCTION**

This case is a case of misfortune for the defendant Jose Jesus Gutierrez. In June of 2007, the parties believed he was a Criminal History category III, and the government offered Mr. Gutierrez a Fast-Track sentence that the parties expected would be Criminal History Category III, Offense Level 17, resulting in a range of 30-37 months. At the time of the plea offer, the parties only had access to Mr. Gutierrez' CLETS Criminal History printout, which did not relay several of his misdemeanor convictions later found by the Probation Department.

He then filed a motion to collaterally attack his 1997 deportation. Although this Court found that Mr. Gutierrez' due process rights had been violated at the hearing, this Court denied the motion for failure to show prejudice. Despite the Court's holding that a due process violation had occurred, which supports a conclusion that Mr. Gutierrez' motion was legitimately contemplated and was not frivolous, the government withdrew its Fast Track offer from Mr. Gutierrez with no prior notice.

Now, the government argues that a sentence of 77 months is the sentence "no greater than necessary" to adequately punish Mr. Gutierrez, despite the fact that the government once believed that thirty months would be sufficient.

Mr. Gutierrez is a first time illegal re-entry offender who has extensive ties to Mexico and as such, has the means, resources and personal motivation to remain out of the United States upon completion of this sentence. He only has two prior deportations, and he was a lawful green card holder of this country for many years. His most serious offense is possession of narcotic drugs for sale, which resulted in his one and only state prison sentence of two years. The remainder of his sentences are short stints in the county jail. Sending Mr. Gutierrez to prison for six and a half years (over three times as long as any state sentence served to date) would be a sentence "far greater than necessary" to serve the ends of justice and fulfill the mandates of 18 U.S.C. § 3553(a). For the reasons stated below, Mr. Gutierrez respectfully asks this Court to sentence him to no more than 37 months imprisonment for this offense; the low end of Criminal History Category IV, Offense Level 17, which is the same Offense Level Mr. Gutierrez would have been sentenced to under a Fast Track offer.

**ARGUMENT**

**I.     THE PROPER GUIDELINE RANGE SHOULD BE CRIMINAL HISTORY V, OFFENSE LEVEL 21, OR 70-87 MONTHS**

After reviewing the case cited by the government, Mr. Gutierrez must concede that his conviction for Cal. Penal Code §11378 constitutes a "drug trafficking offense" for 2L1.2(b)(1)(A) purposes. *See United States v. Valle-Montalbo*, 474 F.3d 1197, 1201 (9th Cir. 2007). However, as noted in the Presentence Report, Mr. Gutierrez strongly objects to the Probation Officer's findings that he is in Criminal History Category VI. He instead argues that he should be in Criminal History Category V. The disputed five points at issue are Mr. Gutierrez' 1994 convictions for two Petty Theft misdemeanors and a Hit and Run with Property Damage misdemeanor, which would only be countable under the advisory Guidelines if the sentence was "imposed more than ten years' prior to

the defendant's commencement of the instant offense." *See* U.S.S.G. §4A1.1, Commentary, Note 2. These 1994 convictions are more than ten years past the commencement of the instant offense; namely, May 16, 2007. The government cannot prove any date other than the May 16, 2007 date, and these five points should not be counted for Criminal History calculation purposes accordingly.

### I. Mr. Gutierrez' Criminal History Should be Calculated From the "Found-In" Date in the Indictment, or May 16, 2007

The one-count indictment at issue in the instant case is as follows:

> The Grand Jury charges:
> On or about May 16, 2007, the defendant,
> JOSE JESUS GUTIERREZ-RODRIGUEZ
> an alien, having been previously excluded, deported, and removed from the United States to Mexico, and having subsequently voluntarily returned to and remained in the United States, was found in the Northern District of California, the Attorney General of the United States and the Secretary for Homeland Security not having expressly consented to a re-application by the defendant for admission into the United States, in violation of Title 8, United States Code, Section 1326.

Under the United States Sentencing Guidelines, convictions are time-barred if the sentences imposed do not meet the conditions enunciated in U.S.S.G. §4A1.1 and its applicable Commentary. *See* U.S.S.G. §4A1.1, Commentary, Note 2. The only date alleged in any indictment and admitted by Mr Gutierrez in connection with the instant offense is May 16, 2007. As such, this is the only date that can control for the purposes of §4A1.1.

The fact that Mr. Gutierrez was arrested in December, 2004 does not establish that Mr. Gutierrez committed a "continuing offense" from December, 2004 through May 16, 2007. Mr. Gutierrez has a history of coming to the United States and returning to Mexico, where his family is from. *See* Gov. Oppn. at 6: 19-20 (agreeing that Mr. Gutierrez has substantial ties to Mexico); *see also* Declaration of Jose Gutierrez, attached as Exhibit A, at ¶ 5-6. Mr. Gutierrez' mother, father, and several brothers and sisters live in Mexico, and continue to reside there. *See* PSR at ¶ 38. Quite simply, there is no evidence in the record that establishes Mr. Gutierrez' continuous presence in Mexico between 2004 and 2007. As such, the government has no evidence that Mr. Gutierrez' offense of conviction occurred continuously from December 2004-2007.

\\

**II.     The Government's Position Has No Legal Support**

The government has not cited a single case from the Ninth Circuit in support of its argument that an arrest of a defendant in 2004 establishes a "continuing offense" between 2004 and 2007. *United States v. Godinez-Rabadan*, 289 F.3d 630 (9th Cir. 2002) only addresses the fact that the date the defendant was "found in" the United States is not an element of 8 U.S.C. § 1326. In that case, the defendant was in state custody for the eight months preceding the "found in" date; as such, there was evidence that the defendant had committed a continuous, eight month offense. *United States v. Reyes-Pacheco*, 248 F.3d 942 (9th Cir. 2001) is similarly inapposite. There, the defendant's indictment alleged an illegal re-entry date that the defendant admitted, rather than a "found in date" *Id.* at 945. The "found in" date was established at sentencing by the defendant's arrest and placement into federal custody for the §1326 prosecution. By using the re-entry date in the indictment, the defendant was subjected to additional criminal history category points, which he did not object to at sentencing. *Id.* After failing to object to the indictment prior to pleading or at sentencing, the defendant's claim of sentencing error was reviewed for "plain error" in the Ninth Circuit. After finding that the defendant had not objected to the dates used, the Ninth Circuit found that the re-entry date alleged in the indictment was part of the instant offense. *Id.* at 946. Here, Mr. Gutierrez is objecting to the December, 2004 arrest date as being included in the instant offense, because there is no proof that he was continuously in the country between December 2004 and May 2007. December 2004 was never listed in the indictment, and he has never admitted any presence in the United States between 2004 and 2007. "The crime of being 'found in' the United States after deportation 'is a continuing offense which continues *so long as the alien remains in the country.*'" *Id.* (citing *United States v. Guzman-Bruno*, 27 F.3d 420, 422-23 (9th Cir. 1994)(emphasis added). Here, there is no evidence that Mr. Gutierrez remained in the country between 2004 and 2007. Moreover, the date listed in the instant indictment is May 16, 2007; the "found in" date, rather than the illegal re-entry date. *Reyes-Pacheco* accordingly does not apply.

The out-of-circuit caselaw cited by the government is similarly inapposite. *United States v.*

*Alvarado-Santilano,* 434 F.3d 794 (5th Cir. 2005) only stands for the proposition that a § 1326 prosecution and deportation constitutes a break in an alien's "continuous offense" of being present in the United States. In *United States v. Reyes Nava*, 169 F.3d 278 (5th Cir. 1999), the defendant was enhanced two points for being under a criminal justice sentence at the time of the offense. It appears from this decision that the defendant did not object to a lack of proof regarding his continuous presence in the United States between 1992 and 1997. *See Alvarado-Santilano*, 434 U.S. at 797 ("the district court [in *Reyes-Nava*] enhanced his sentence pursuant to §4A1.1(d) because he was under a criminal sentence during some portion of his illegal stay here.") Moreover, neither of these cases address the issue on point; whether for time counting purposes under §4A1.1, a district court may use evidence of an earlier arrest to alter the "found in" date listed in the indictment as the controlling date. In the absence of caselaw to the contrary, the government's position (which conflicts with its own indictment) should be denied.

### II.     Mr. GUTIERREZ MORE PROPERLY BELONGS IN CRIMINAL HISTORY CATEGORY IV.

Mr. Gutierrez has only served one state prison sentence . *See* PSR at ¶ 30. This prison sentence lasted only fourteen months. *Id.* The remainder of Mr. Gutierrez' two countable convictions are misdemeanor convictions for which he served short periods of time in the county jail. *Id*. at ¶ 29, 31. His last felony conviction is when he was 23 years old; Mr. Gutierrez is now 32 years old. Under these circumstances, Mr. Gutierrez' criminal history is overrepresented by Criminal History Category V.

United States Sentencing Guidelines §4A1.3 authorizes a court to depart downward based on over-statement of criminal history or the likelihood that the defendant will commit other crimes. When considering this departure, the Ninth Circuit authorizes the district court to consider both the nature of the previous convictions as well as the age of the convictions. *See United States v. Brown,* 985 F.2d 478, 482 (9th Cir. 1993). Here, Mr. Gutierrez has only suffered convictions for felony offenses on one date; July 7, 1999. This conviction was almost eight years ago, and Mr. Gutierrez has not suffered additional felony convictions outside of the instant offense. The Court should hold

that Mr. Gutierrez more properly belongs in Category IV for criminal history purposes.

### III. UNDER *BOOKER*, *GALL* AND *KIMBROUGH*, A 37 MONTH SENTENCE IS REASONABLE

After *United States v. Booker*, 125 S.Ct 738 (2005). the applicable Sentencing Guideline range of 51-63 months is guiding, but not binding, upon this Court. "A district court must consider the guideline range, but must also consider the other directives set forth in 18 U.S.C. § 3553(a). Thus, under *Booker*, courts must treat the Guidelines as just one of a number of sentencing factors." *United States v. Ranum*, 353 F.Supp. 2d 984, 985 (E.D. Wisc. 2005). Under *Booker*, the United States Sentencing Guidelines are merely "advisory," and sentencing courts are required to consider all of the factors listed in 18 U.S.C. § 3553(a) in imposing sentence. *Booker*, 125 S.Ct. 738, 757 (2005). Significantly, "there is no presumption of *unreasonableness* that attaches to a sentence that varies from the range. A sentence outside the range need only be adequately explained and consistent with § 3553(a) factors." *United States v. Jordan*, 435 F.3d 693, 698 (7th Cir. 2006) (emphasis in original).

The primary directive in § 3553(a) is that the Court must impose a sentence that is "sufficient, *but not greater than necessary*, to comply with" the purposes of sentencing. See 18 U.S.C. § 3553(a) (emphasis added). Those purposes include the need:

- to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;
- to create adequate deterrence;
- to protect the public from future crimes of the defendant; and
- to provide the defendant with necessary treatment and training.

18 U.S.C. § 3553(a)(2).

Section 3553(a) directs sentencing courts to consider a number of additional factors as well, including:

- the nature and circumstances of the offense, § 3553(a)(1);
- the history and characteristics of the defendant, § 3553(a)(1);
- the kinds of sentences available, § 3553(a)(3);
- the sentencing guideline range, § 3553(a)(4);
- pertinent Sentencing Commission policy statements, § 3553(a)(5);
- the need to avoid unwarranted sentencing disparities, § 3553(a)(6);
- the need to provide restitution to any victims of the offense, § 3553(a)(7).

1  To the extent that the sentencing factors that the Court is bound to consider pursuant to 18
2  U.S.C. § 3553(a) conflict with the Guidelines or the policy statements of the Guidelines, the district
3  court must, after *Booker*, consider the 3553(a) factors equally with the Guidelines. *See United States*
4  *v. Myers*, 353 F.Supp.2d 1026, 1029 (S.D. Iowa 2005)(stating that "the work of a sentencing court,
5  then, is to evaluate all the interest, as represented by the statutory factors, through careful and patient
6  attention to all parties involved.")  Once the Court determines and considers the advisory Guideline
7  range, this Court must then equally evaluate the factors enunciated under Title 18, Section 3553(a) to
8  determine a just and appropriate sentence.  "District courts must treat the Guidelines as the "starting
9  point and initial benchmark." *Kimbrough v. United States*, __U.S.__, 128 S. Ct. 558 at *43
10 (2007)(citing *Gall v. United States*, ___ U.S.___, 128 S.Ct. 556 at *21 (2007)).  "While the statute
11 still requires a court to give respectful consideration to the Guidelines, *Booker* permits the court to
12 tailor the sentence in light of other statutory concerns as well." Id. at *32 (citations omitted).
13  In the case of Mr. Gutierrez, a low-end sentence at Criminal History Category IV, Offense
14 Level 17, or 37 months is the sentence sufficient, but no greater than necessary to appropriately
15 punish this first time offender for illegal-reentry.  Prior to the days of *Booker,* the Ninth Circuit has
16 long recognized that a "combination of factors" could together constitute a mitigating circumstance
17 justifying a low sentence. *See United States v. Cook*, 938 F.2d 149 (9th Cir. 1991).  In *Cook*, the
18 Court explained that "[t]here is not reason to be so literal-minded as to hold that a combination of
19 factors cannot together constitute a 'mitigating circumstance.'" *Id.* at 153.  Although the court no
20 longer speaks in the language of "departures," the mitigating factors in Mr. Gutierrez' favor,
21 considered under the terms of 18 U.S.C. § 3553, demonstrate that a 37 month sentence is the
22 sentence "no greater than necessary" to fulfil the goals of sentencing enunciated by Congress.
23 **A.    As Nothing Has Changed Between Now and the Time the Government Offered
        Mr. Gutierrez a Fast Track Disposition, a Sentence that Mimics the Fast Track
24      Offer is the Fair and Appropriate Sentence in this Case**
25 Back in June 2007, the government offered Mr. Gutierrez a Fast Track disposition.  This offer
26 made sense; Mr. Gutierrez has never before been prosecuted for illegal re-entry, has never served a

prison sentence longer than two years; has only been to state prison once, and has no violence, abusive conduct towards others, weapons charges, child assault, or any other crimes that would cause one to believe that he is a danger to the community. He is an excellent candidate for an accelerated disposition as he is similarly situated to other Fast Track defendants. Moreover, Mr. Gutierrez is a unique defendant, in that all of his close family resides in Mexico at this point in time. Now that his wife and children have departed for Mexico (an event that only recently occurred, in December, 2006) he has every incentive to return to Mexico and remain in the town that now houses his mother, father, close siblings, wife and children.

Mr. Gutierrez was informed of the government's Fast Track offer, and then elected to pursue a violation in his due process rights during the deportation process. At the time he filed the motion, undersigned counsel did not seek clarification regarding whether the Fast Track offer would still be in place should Mr. Gutierrez lose the motion. Nor was clarification provided from the government on this point when undersigned counsel informed the government it would be filing the motion. After the motion hearing, the government withdrew the Fast Track offer, solely on the grounds that Mr. Gutierrez had elected to file a pretrial motion to dismiss alleging a violation of his constitutional rights.

Mr. Gutierrez understands fully that he does not have a "right" to a Fast Track offer, and does not make that argument herein. Instead, Mr. Gutierrez asks the Court to strongly consider the fact that a few short months ago, the government believed that Mr. Gutierrez was a good candidate for the Fast Track sentencing reduction. The government made this offer with a full understanding of Mr. Gutierrez' three felony convictions, all listed on the July 7, 1999 Abstract of Judgment, as well as the 1994 and 1995 misdemeanor convictions. At that time, the government believed that Offense Level 17 was the offense level that was sufficient, but no greater than necessary to adequately punish Mr. Gutierrez. The convictions the parties did not know about were misdemeanor convictions that would not have affected Mr. Gutierrez' eligibility for Fast Track. As none of the facts affecting the factors listed under 18 U.S.C. § 3553(a) have changed between the time the government made the

1  Fast Track offer and today, it is hard for Mr. Gutierrez to understand why the government now
2  believes that a 77 month sentence is the fair and just sentence in his case.  The Court should consider
3  the government's Fast Track offer as relevant evidence when considering each of the factors
4  enunciated under 18 U.S.C. § 3553(a).

**1.    18 U.S.C. § 3553(a)(1)**

6  Mr. Gutierrez' reasons or motivations for rejecting the fast track deal fall squarely within the
7  coverage of § 3553(a)(1).  Illegal reentry cases have become a common fixture in federal court in the
8  Northern District of California (and clearly elsewhere), and many if not most defendants cannot
9  fathom how the act of reentry will result in a sentence of 37, 36, or 51 months, let alone 77-96
10 months, as is the guideline range the government argues for here.  Many defendants, including Mr.
11 Gutierrez, naively believe that even fast track offers entail sentences which are too high, and delude
12 themselves into believing that courts will not impose sentences as long as they do in such cases.  It is
13 highly relevant, if not absolutely necessary, for this Court to consider that Mr. Gutierrez was eligible
14 for and was offered a fast track disposition, but then rejected the offer only because of his
15 individualized inability to fully comprehend and/or appreciate the severity of the criminal sanctions
16 he faced, the lack of information he had regarding the availability of the Fast Track offer after the
17 motion was filed and adjudicated, and the fact that his due process rights were found to have been
18 violated during the deportation process.  The fact that a fast track offer was made in this case, as well
19 as the reasons for its rejection by Mr. Gutierrez, should be considered by this Court as supporting
20 evidence that a sentence at Offense Level 17 is "just punishment" in this case.

21 This court could, of course, conclude that plea offers are made for a reason, and that a person
22 who rejects such an offer has to live with the consequences of that decision.  On the other hand, this
23 court could legitimately conclude that a misunderstanding, or some cognitive, emotional or even
24 cultural issue prevented Mr. Gutierrez from taking advantage of the offer that was extended to him,
25 and that he should receive a mitigated sentence as a result.  The rejected plea offer is thus relevant
26 for this Court to consider under § 3553(a)(1).

### 2.     18 U.S.C. § 3553(a)(2)

Similarly, the fact that the government has extended a fast track offer to Mr. Gutierrez is relevant when this Court considers the seriousness of the offense, just punishment, and adequate deterrence to criminal conduct. Defendants like Mr. Gutierrez are only offered the fast track disposition after the Government has carefully considered their background, how serious their conduct was *vis-a-vis* other defendants charged with illegal reentry, and whether a sentence below that indicated by the guidelines will provide them with just punishment while adequately deterring them from future illegal behavior. In essence, a fast track offer represents a judgment by the government on the very factors listed in § 3553(a)(2). Back in June, 2007, the government believed Mr. Gutierrez was Fast Track eligible. Now, in response to the government's arguments that Mr. Gutierrez suddenly has an aggravated criminal history that merits a 77 month sentence, this Court should consider an earlier stage in the proceedings the government thought otherwise, as was reflected in its plea offer. This court can very reasonably conclude that a rejected plea offer should be considered as evidence to rebut the claim now made by the government that Mr. Gutierrez is a defendant with an aggravated criminal history who merits a very high 77 month sentence on a first time illegal re-entry offense.

Indeed, it should be highly relevant to this Court, when determining what sentence would be a just sentence under § 3553(a)(2), to know exactly what offer was made compared to what sentence is now being suggested by the Government after the rejection of that offer. Certainly, plea offers are the government's right to make or not make. Here, the additional punishment deemed appropriate by the government for Mr. Gutierrez' rejection of its standard fast track offer is somewhere between 40 months and 26 months, depending on what Criminal History category this Court ultimately places Mr. Gutierrez. Under the broad parameters of § 3553 and § 3661, this Court certainly has the right to consider Mr. Gutierrez' rejected plea offer and any other fact when determining what is a fair and just sentence under § 3553(a)(2).

\\

### 3.  18 U.S.C. § 3553(a)(6)

The sentencing statute directs district courts sentence defendants in a manner that avoids unwarranted sentencing disparities.  Importantly, this factor is applicable here because other defendants in the Northern District of California who are similarly situated with Mr. Gutierrez received sentences much lower than that requested by the government in this case.  Should the Court adopt the government's recommendation, Mr. Gutierrez would be sentenced in a far more stringent manner than defendants similarly situated to himself.  The disparity suggested by the government's recommendation is between 40 months and 26 months, depending on whether Mr. Gutierrez is placed by this Court in Criminal History category IV, V, or VI.  As a first time illegal-reentry offender with no violence in his past who has only served one prison sentence of under two years, Mr. Gutierrez should be sentenced by this Court along the same lines a similarly situated Fast Track defendants.  Here, Mr. Gutierrez urges that he should be placed by this Court in Criminal History Category IV.  At the Fast Track offense level of 17, the resulting range would be 37-46 months.

### 4.  The Remainder of the Factors Under 18 U.S.C. § 3553(a)

A consideration of the sentencing factors addressed in § 3553(a)(3)(4)(5) and (7), § 3553(a)(3) also support Mr. Gutierrez' request for a sentence at Offense Level 17.  Specifically, § 3553(a)(3) requires a court to consider the kinds of sentences available; a fast track sentence of 37 months is clearly a sentence which was "available" to the defendant, even if it is not the sentence recommended by the Government.   Similarly, § 3553(a)(4) mandates that a court look at the guideline sentences applicable to the defendant's offense.  Although the guidelines normally create a certain range for illegal reentry cases, the fast track program in place in the Northern District is just that; a *program* that applies to a class of individuals who meet its criteria, and it provides for a lower guideline range in a certain kind of case.  Insofar as § 3553(a)(4) requires a court to consider the guideline range for a given offense, a court must necessarily consider the fast track system and whether the defendant qualified for that program in order to correctly determine the guidelines applicable to his offense.  Here, Mr. Gutierrez qualifies and the offense level "no greater than necessary" to serve the goals of

the sentencing statute is Offense Level 17.

### B. Because Mr. Gutierrez' Immediate Family Either Lives or Has Relocated to Mexico, He is Not Likely to Return to this County.

At the end of 2006, Mr. Gutierrez' wife and children relocated to Mexico, which is where Mr. Gutierrez' parents reside. *See* PSR at ¶¶ 38, 40. The timing of this move coincided with Mr. Gutierrez' incarceration on a parole violation in December, 2006. Without Mr. Gutierrez, his wife Cecilia Torres and their children could not survive well in the United States; as such, they traveled to Mexico to seek support from Mr. Gutierrez' parents and family. The entire family now resides in Mexico, where they are waiting for Mr. Gutierrez to return.

The reason Mr. Gutierrez continued to return to this country after his deportation in 2003 was to see his children and his wife. This need has now been obviated by the fact that his wife and children are living in Mexico. Mr. Gutierrez has many family members, land, and financial support in Mexico. He comes from a family of means, and can survive well in Mexico. As such, he is more advantageously situated than the typical illegal-reentry defendant who has known no other life outside the United States. Mr. Gutierrez is thus far less likely to re-offend than the typical illegal re-entry defendant, given his particularized circumstances. This is particularly true given the fact that Mr. Gutierrez has never before been prosecuted for illegal re-entry, and has never before understood that he will face significant prison penalties for again returning to the United States. In addition, Mr. Gutierrez' record indicates that he has minimal deportations when compared against a typical illegal re-entry client.

Now that Mr. Gutierrez understands the way the federal system works, he assures this Court that he will remain in Mexico with his family rather than coming back to the United States to face sure incarceration and stiffer sentences. Unlike most defendants, Mr. Gutierrez has the means and family support in Mexico to back up that promise. He thus presents a far lower risk of recidivism than the typical defendant prosecuted for 8 U.S.C. § 1326. A 37 months sentence is sufficient, but not greater than necessary to send a strong message to Mr. Gutierrez that he needs to make good on this promise to remain out of the United States.

## CONCLUSION

For the aforementioned reasons, defendant Jose Jesus Gutierrez hereby requests this Court to sentence him to 37 months of imprisonment.

Dated: February 7, 2008

Respectfully submitted,

BARRY J. PORTMAN
Federal Public Defender

/S/

ELIZABETH M. FALK
Assistant Federal Public Defender

DEFENDANT'S SENTENCING MEMORANDUM
*United States v. Gutierrez*
CR 07-0334 CRB                           - 13 -